POWERS *v.* INDIANA & MICHIGAN ELECTRIC CO.

CANCELLATION OF INSTRUMENTS—DEEDS—EASEMENTS—FRAUD.
Cancellation of deed granting easement for power line on ground of fraud was properly denied grantors where they failed to prove that they were defrauded, and especially where they claimed to have signed deed without reading it or having it read to them.

Appeal from Cass; Warner (Glenn E.), J. Submitted October 7, 1930. (Docket No. 24, Calendar No. 35,074.) Decided December 2, 1930.

Bill by Elba E. Powers and another against the Indiana & Michigan Electric Company, an Indiana corporation, for cancellation of an easement and other relief. From decree dismissing bill, plaintiffs appeal. Affirmed.

*Burns & Hadsell,* for plaintiffs.

*Gore & Harvey,* for defendant.

NORTH, J. Preliminary to the construction of a high tension power line, the defendant sought and obtained from plaintiffs a right of way across their farm, located on section five of Howard township, Cass county, Michigan. About one acre of plaintiffs' land is triangular in shape and lies on the west side of the highway. The remaining 70 acres, on which the buildings are located, lies on the east side of this highway. Defendant's agent, Mr. Frick, negotiated an agreement with plaintiffs whereby they were to be paid $50 for each tower location and

$50 for resulting damages. Plaintiffs claim that Frick told them the tower would be located on the triangular piece on the west side of the road and that the power wires would overhang plaintiffs' orchard. They signed an easement deed and a damage agreement without reading them, and, they claim, without the instruments having been read to them, and that in so doing they relied upon Frick's representation as to the contents of the instruments. The testimony along this line by Mr. Powers was:

"He (Frick) said he wanted to put a tower on * * * that triangular piece across the road, and that that power line would go through the orchard. * * * He said he wanted us to sign a contract. * * * He showed me a contract. I didn't read it, nor he didn't read it to me, but I signed it. * * * He said that would give him permission to put this tower across on that triangular piece. * * * Well, he said they wanted * * * permission to put a tower on this triangular piece. * * * He showed me a map. I suppose an airplane map. I did not see any tower line there at all. * * * He pointed out on this map there where this tower would come. On that triangular piece across the road."

Mrs. Powers also testified that defendant's representative said they wanted to place the tower in the triangular piece, and "he said he would prepare or fix this paper—contracts." She further testified the agent did not read the instruments to them and did not tell them "what they had in them." Later defendant's line of wires was run across the southwest corner of the larger parcel of plaintiffs' farm and east of the buildings. A tower was located about 100 feet north of the south line and 550 feet east of the highway. Plaintiffs forbade the erection of the tower at this point, but over their protest its construction was undertaken.

Defendant's agent Frick denied in his testimony the alleged representations, and claimed that he exhibited to Mr. Powers a map which showed the location of the power line where it has since been erected. He also testified that he read to plaintiffs ''the binding paragraphs in the easement.'' In neither of these instruments is it definitely specified where the wires shall pass over plaintiffs' property nor where a tower or towers may be located. The instrument creating the easement provides that the defendant may erect, maintain, inspect, and relocate at will towers, cross-arms, or fixtures, and string wires and cables over the described premises, describing the whole of plaintiffs' farm.

By their bill of complaint plaintiffs seek cancellation of the easement deed and of the damage agreement on the ground of fraud, also on the ground of mutual mistake as to the location of defendant's towers and lines of wires. They ask for reformation of the instruments and that the defendant be enjoined from going upon plaintiffs' land except for the purpose of constructing its line in the location for which plaintiffs contend. The plaintiffs also seek damages sustained by them in consequence of defendant's alleged unlawful entry upon their premises.

The defendant denied the material allegations of the bill, and asked that it be dismissed. After hearing proofs in open court, the circuit judge found that the plaintiffs had not established their claim of having been defrauded. A decree dismissing the bill was taken, and plaintiffs have appealed.

A more detailed review of the testimony would be without profit. Plaintiffs have pointed out some alleged discrepancies in defendant's testimony, especially that given by its agent Frick; and they assert that the trial judge's determination of the

controlling issue of fact is not justified by the record. We cannot agree with plaintiffs. They were intelligent people, and no reasonable explanation or excuse appears in this record which would justify them in executing these written instruments without either reading them or having them read over to them. We have recently had occasion to hold that granting relief under such circumstances tends strongly to deprive one of the security which should be afforded by solemnly written instruments. *Gardner* v. *Johnson,* 236 Mich. 258. See, also, *Sponseller* v. *Kimball,* 246 Mich. 255. In *Upton* v. *Tribilcock,* 91 U. S. 45, it is said:

"It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and if he will not read what he signs, he alone is responsible for his omission."

In the above case the following is quoted:

"Equity will not assist a man whose condition is attributable only to that want of diligence which may be fairly expected from a reasonable person. *Duke of Beaufort* v. *Neeld,* 12 Cl. & F. 248–286."

We have reviewed the record with care, and are convinced that we would not be justified in disturbing the determination of the trial judge wherein he concludes, "The plaintiffs have not proved they were defrauded." The decree of the lower court is affirmed, with costs to the appellee.

Wiest, C. J., and Butzel, Clark, McDonald, Potter, Sharpe, and Fead, JJ., concurred.