WOLFF v. STEINER.

MUNICIPAL CORPORATIONS—ZONING ORDINANCE—NONCONFORMING USE —EQUALLY DIVIDED COURT.

Decree in suit to enjoin defendants from using 5 lots in violation of zoning ordinance for the parking of cars, wherein trial court found defendants had established prior nonconforming use for off-street parking for 2 lots but were violating the ordinance in their use of the remaining lots, is affirmed by an equally divided court.

Appeal from Wayne; McCree (Wade H., Jr.), J. Submitted June 7, 1957. (Docket No. 41, Calendar No. 47,320.) Decided December 24, 1957.

Bill by Joseph P. Wolff, commissioner of the department of buildings and safety engineering of the City of Detroit, the Community Home Owners Association of Detroit, Inc., and several property owners, against Alfred F. Steiner, Olga Steiner and Alfred F. Steiner Company, a Michigan corporation, to enjoin use of property for purposes other than residential as defined in zoning ordinance. Decree granting partial relief. Plaintiffs appeal. Defendants crossappeal. Affirmed by an equally divided court.

*Paul T. Dwyer,* Corporation Counsel, *John F. Hathaway,* Assistant Corporation Counsel, and *E. J. Scallen,* for plaintiffs.

*John G. Dunn, Robert J. Hanley* and *Wilfred A. Steiner,* for defendants.

REFERENCES FOR POINTS IN HEADNOTES

3 Am Jur, Appeal and Error § 1160; 58 Am Jur, Zoning § 146 *et seq.*

KELLY, J. (*for reversal*). Defendants conduct a new and used-car sales business on property defendants own on the north side of Mack avenue, in the city of Detroit. An alley lies north of and parallel to Mack avenue and Grayton avenue extends on each side of the alley into Mack avenue. On the west side of Grayton, facing Mack, is defendants' used-car lot and on the east side of Grayton, facing Mack, is defendants' service building. The property in dispute consists of approximately 3-1/2 lots on the west side and 2 lots on the east side of Grayton, both of which parcels are immediately adjacent to the alley.

Ordinance 171-D, the official zoning ordinance of the city of Detroit, became effective December 25, 1940, and includes under a section entitled "Nonconforming Buildings and Uses," the following:

"Any such nonconforming building or structure may be continued and maintained provided there is no physical change other than necessary maintenance and repair in such building or structure except as permitted in section 3.5, 3.6 and 3.7."

Defendants filed with the common council of Detroit their petition (March 22, 1950), requesting that part of the property now in dispute be rezoned from residential, so that defendants could use same in parking cars essential to the operation of their business. The council referred this petition to the Detroit city plan commission. The council approved the commission's recommendations, denying the petition on April 21, 1950.

Defendants then sought relief by petition addressed to the department of building and safety engineering, asking permission to use the same lots now in dispute for customer parking. Upon denial of this petition, defendants filed an appeal to the Detroit board of zoning appeals. After hearing, that board, on June 16, 1954, affirmed the findings of the

department of buildings and safety engineering, as follows:

"1. That district zoning map No. 39 shows the premises to be in an R1 district.

"2. That the board found that the proposed use would be nonconforming and not permitted under the zoning ordinance in this R1 district.

"3. That the board also found no vested right was proven.

"4. That appellant failed to show practical difficulty or unnecessary hardship in this case.

"5. That many protesting property owners in interest appeared at the hearings and 9 letters and 2 petitions of protest, signed by 35, were submitted to the board.

"6. That field inspections of the premises were made, reports of which were given at the hearings.

"The board, therefore, in accord with its rules of procedure, and in order that the spirit, intent and purpose of the zoning ordinance shall be observed and substantial justice done, resolved that this appeal from the mandatory action on the part of the department of buildings and safety engineering to use vacant land for customer parking, as per plan, in an R1 district, be hereby denied."

At the time plaintiffs filed their bill of complaint in the circuit court of Wayne county (January 14, 1955) defendants were using the lots located on the west side of Grayton for parking and storing motor vehicles and the property on the east side to maintain a structure they built to store waste.

After taking testimony the chancellor determined that the defendants had established nonconforming use for off-street parking for 2 lots, but that defendants were violating the ordinance in their use of the remaining lots. From this finding, both plaintiffs and defendants appeal.

Plaintiffs objected to defendants' introduction of testimony to support the contention that defendants

had established a nonconforming use, on the ground that the circuit court had no jurisdiction to hear any such testimony in view of the decision of the board of zoning appeals, from which decision defendants had failed to appeal. The court received the testimony over plaintiffs' objections.

The board of zoning appeals had jurisdiction on the questions presented to it in regard to nonconforming use, and the main question presented on this appeal is this: Would said board's decision be final when defendants failed to meet the statutory requirements in regard to the right to appeal?

CL 1948, § 125.590 (Stat Ann 1949 Rev § 5.2940) establishes clearly and without doubt defendants' right to seek relief from the adverse decision of the board of zoning appeals, with the following provision:

"Any party aggrieved by any order, determination or decision of any officer, agency, board, commission, board of appeals, or the legislative body of any city or village, made pursuant to the provisions of section 3a of this act may obtain a review thereof both on the facts and the law, in the circuit court for the county wherein the property involved or some part thereof, is situated: Provided, That application is made to the court within 30 days after delivery of a copy of such order, determination or decision."

The only answer of the chancellor to plaintiffs' challenge as to his right to take testimony in regard to nonconforming use is as follows:

"Plaintiffs contend that item number 3 above constitutes a determination by the board of zoning appeals adverse to defendants' claim of a nonconforming use, and being unappealed from, is binding upon this court. The board does not so state in this finding but speaks instead of 'vested right' without defining this concept. However to give it plaintiffs' construction, it constitutes a decision only that there

was no prior nonconforming use as to all the lots, considered as an entity, as set forth in the application. There is nothing in the decision of the board to indicate that there might not have been a nonconforming use as to 1 or more of the lots for which the permit was sought. The court therefore finds that the decision of the board of zoning appeals does not preclude it from finding the existence of a prior nonconforming use as to lot 6."

The writer of this opinion is not impressed with the chancellor's answer to the challenge of his rights of jurisdiction, as presented by plaintiffs.

The legislature gave to the circuit court not only jurisdiction to enjoin the violation of a zoning ordinance, but a mandate that such violation should be abated, as is disclosed in the provision of PA 1921, No 207, § 7 (CL 1948, § 125.587 [Stat Ann 1949 Rev § 5.2937]), which provides:

"Buildings erected, altered, razed or converted, or uses carried on in violation of any provision of local ordinances or regulations made under the authority of this act are hereby declared to be a nuisance per se. The court shall order such nuisance abated."

This Court in *Portage Township* v. *Full Salvation Union,* 318 Mich 693, 705, commented upon the ability of a court of equity to give speedy remedy where a violation of a zoning ordinance was involved by stating:

" 'The ground of this jurisdiction in cases of purpresture, as well as of public nuisances, is the ability of courts of equity to give a more speedy, effectual, and permanent remedy, than can be had at law. They cannot only prevent nuisances that are threatened, and before irreparable mischief ensues, but arrest or abate those in progress, and, by perpetual injunction, protect the public against them in the future.' "

A court of equity does not function to destroy well-established principles of law. Those who sit in judgment in equity must resist every impulse to avoid or set aside clear mandates of law as established by the legislature. The question (in the present case) as to whether the legislature used good judgment in restricting a defendant's right to appeal to a period within 30 days was not a question for the chancellor to decide. The legislature so provided. Defendants failed to appeal within the statutory limitation of time and the chancellor erred in admitting proofs on the question of nonconforming use. Plaintiffs are entitled to an injunction restraining defendants from using any of the land described in the bill of complaint for purposes other than that provided in an R1 zone district.

Decree should be reversed. Costs to plaintiffs and appellants.

DETHMERS, C. J., and SHARPE and CARR, JJ., concurred with KELLY, J.

BLACK, J. *(for affirmance)*. For good reason stemming from constitutional protection against the taking of property and property rights without payment of just compensation, Detroit's presently advanced zoning ordinance, by section 3.3(b) thereof provides:*

"Any such nonconforming use may be maintained and continued, provided there is no increase or enlargement of the area, space or volume occupied by or devoted to such nonconforming use."

Mr. Justice KELLY writes that he "is not impressed with the chancellor's answer to the challenge of his

---

* Mr. Justice KELLY has assumed, erroneously we believe, that section 3.3(a) of the ordinance, pertaining to nonconforming *buildings or structures* distinguished from *uses,* is the provision to which defendants address their claimed rights.

rights of jurisdiction, as presented by plaintiffs."
We are not aware that the jurisdiction below—we
said jurisdiction—was challenged by anyone. To the
contrary, plaintiffs duly invoked the aid of equity
and thus requested that the benign will of the chan-
cellor be done with respect to the subject matter of
their bill. The chancellor found, consistent with
equity's maxims and interpretive legal rules equity
usually follows, and therefore decreed, that the order
of the board of zoning appeals (dated June 16, 1954)
determined pertinently no more than this; that there
had been no previous-to-ordinance nonconforming
use of *all* of defendants' lots "considered as an
entity." From such well-founded premise the chan-
cellor reasoned that equity stood free to decide, as an
original question, whether certain of the involved
lots (lot 6 of Volkening and lot 108 of Scully's) had
from 1930 been steadily and beneficially used for
private off-street parking. Since the ordinance did
not go into effect until 1940, and since the mentioned
finding of previous use of the 2 lots was established
by overwhelming if not unopposed proof, the chan-
cellor, in our view, was right in decreeing that use
of the 2 lots as found qualified them for exception
under the quoted provision of the ordinance.

The chancellor's opinion is complete and compre-
hensive. It is reasoned to a conclusion agreeable
with equity. We therefore adopt that opinion in en-
tirety as our own. It follows:

"Defendants are the owners of lots 6, 7, 8, and the
south 22.5 feet of lot 9 of Volkening, Overfield &
Lyons Subdivision, and lots 107 and 108 of Arthur
J. Scully's Vogt Farm Subdivision, which lots are
situated on the west and east sides respectively of
Grayton avenue immediately north of an unpaved
alley which runs at right angles to Grayton and be-
hind business property on the north side of Mack
avenue in the city of Detroit. Defendants also own

the business property on the north side of Mack avenue across the alley immediately south of the aforesaid lots. Defendants conduct a new and used-car sales agency on the business property.

"The aforementioned lots north of the alley are included in a district zoned R1 under the Detroit zoning ordinance. This designation forbids their use for business purposes. Notwithstanding, defendants presently use all these lots for the off-street parking of automobiles, and in addition use lots 107 and 108 of Arthur J. Scully's Vogt Farm Subdivision for the maintenance of a large concrete waste receptacle used in conjunction with their business.

"Plaintiffs seek to enjoin defendants' business use of these lots as being contrary to the regulations applying to R1 districts.

"Defendants assert the right to continue the use of the lots for parking under the provisions of section 3.3(b) of the zoning ordinance, which permits the maintenance and continuance of nonconforming uses existing at the effective date of the ordinance. They claim that they have used the property for parking purposes continuously from a time prior to December 25, 1940, the effective date of the zoning ordinance, up to and including the present time.

"The court heard extensive testimony touching upon defendants' assertion of a prior nonconforming use, and finds that in the summer of 1930, with the express permission of the then owner, defendants began to park customer and employee cars on lot 6 of the Volkening, Overfield & Lyons Subdivision and upon lot 108 of Arthur J. Scully's Vogt Farm Subdivision. The proofs establish that defendants have continued this use in connection with their business up to and including the time of this hearing. There were no building restrictions in the chain of title to the lots in the Volkening, Overfield & Lyons Subdivision until 1939, when extensive residential construction was commenced along Grayton avenue and a petition was circulated among the owners of the several lots to restrict them to residential use. It

is significant that no restrictions were placed on the south 22.5 feet of lot 9 or on lots 8, 7 or 6, on which defendants had the owner's permission to park vehicles. Despite permission to park on lots 7, 8 and the south 22.5 feet of lot 9, as well as on lot 6, the court finds that defendants did not so employ these lots except on infrequent occasions when they processed fleet orders or otherwise handled more cars than usual. The court finds that this infrequent and occasional use of lots 7, 8 and the south 22.5 feet of lot 9 did not constitute a prior nonconforming use within the meaning of the ordinance.

"Plaintiffs contend however that this court is precluded from finding the existence of a prior nonconforming use. They assert that defendants have submitted the question of the existence of the claimed nonconforming use to the board of zoning appeals, and having failed timely to appeal from an adverse determination, are now bound by the same. Plaintiffs' contention relates to the defendants' application filed April 20, 1953, with the department of buildings and safety engineering of the city of Detroit for a permit to use lots 6, 7, 8 and the south 22.5 feet of lot 9 as a parking lot. This application was denied as being a prohibited use in an R1 district, and defendants appealed April 30, 1953. The board of zoning appeals on June 16, 1954, denied the application for the following reason as set forth in their order dated June 16, 1954:

" 'The proposed use would not be permitted in this district and would be considered as a B2 use in a R1 district.'

"This order also contained the following recital:

" 'Based upon the information obtained and evidence presented, the following is a brief of some of the more important facts and findings determined by the board in this case:

" '1. That district zoning map No. 39 shows the premises to be in an R1 district.

" '2. That the board found that the proposed use would be nonconforming and not permitted under the zoning ordinance in this R1 district.

" '3. That the board also found no vested right was proven.

" '4. That appellant failed to show practical difficulty or unnecessary hardship in this case.

" '5. That many protesting property owners in interest appeared at the hearings and 9 letters and 2 petitions of protest, signed by 35, were submitted to the board.

" '6. That field inspections of the premises were made, reports of which were given at the hearings.'

"Plaintiffs contend that item number 3 above constitutes a determination by the board of zoning appeals adverse to defendants' claim of a nonconforming use, and being unappealed from, is binding upon this court. The board does not so state in this finding but speaks instead of 'vested right' without defining this concept. However to give it plaintiffs' construction, it constitutes a decision only that there was no prior nonconforming use as to all the lots, considered as an entity, as set forth in the application. There is nothing in the decision of the board to indicate that there might not have been a nonconforming use as to 1 or more of the lots for which the permit was sought. The court therefore finds that the decision of the board of zoning appeals does not preclude it from finding the existence of a prior nonconforming use as to lot 6.

"Plaintiffs further claim that defendants' use of the property in Volkening, Overfield and Lyons Subdivision was extinguished when in 1939, before the effective date of the zoning ordinance, the State of Michigan acquired title to the property and reconveyed to defendants' predecessor in title in 1941, even though defendants' user continued throughout this period. Plaintiffs invoke the general rule that prior liens and encumbrances are extinguished when the State obtains property under tax foreclosure and that this property was reconveyed free and clear of

all encumbrances. Plaintiffs' statement of the law is correct, but plaintiffs do not direct our attention to any authority defining a restriction imposed by municipal authority as an encumbrance. On the contrary, although restrictions on the use of land fixed by covenants or agreements between owners constitute encumbrances, restrictions imposed by legislative or municipal authority are not generally considered such. Therefore, any rights acquired under the zoning ordinance were unaffected by the tax foreclosure sale.

"The court therefore finds that defendants' use of lots 7, 8 and the south 22.5 feet of lot 9, Volkening, Overfield & Lyons Subdivision and lot 107 of Arthur J. Scully's Vogt Farm Subdivision for parking, and of lots 107 and 108 of Arthur J. Scully's Vogt Farm Subdivision for the maintenance of a rubbish receptacle, is in violation of the zoning ordinance, and should be enjoined.

"The court further finds that lot 6 of Volkening, Overfield & Lyons Subdivision, and lot 108 of Arthur J. Scully's Vogt Farm Subdivision were used for off-street parking prior to and at the effective date of the ordinance and therefore may be maintained and continued under the provisions of section 3.3(b)."

We vote for affirmance, with costs to defendants.

SMITH, EDWARDS, and VOELKER, JJ., concurred with BLACK, J.