# STATE OF MICHIGAN

# COURT OF APPEALS

ST. CLAIR INN, LLC,

Plaintiff-Appellee,

v

TRANSCAPITAL BANK and CITY OF ST. CLAIR,

Defendants,

and

WATERFRONT HOTEL VENTURES, LLC,

Defendant-Appellant.

UNPUBLISHED
March 24, 2015

No. 319481
St. Clair Circuit Court
LC No. 12-003165-CZ

Before: MARKEY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Defendant Waterfront Hotel Ventures, LLC (Waterfront) appeals by right the trial court's order quieting title to a parcel of land in plaintiff, amending the Covenant Deed, granting plaintiff's motion for summary disposition under MCR 2.116(C)(10) and (C)(9), and denying defendant's motion for summary disposition under MCR 2.116(C)(7). We reverse in part and remand for entry of an order consistent with this opinion.

## I. FACTS

This case involves a dispute concerning the property comprising the St. Clair Inn, located in St. Clair, Michigan, referred to as Parcels 1 to 7. The parties do not dispute that, in 1994, pursuant to the City's Planned Unit Development Ordinance, Article 8.1, *et seq.*, the city adopted a zoning ordinance amending the land use of the property to "planned unit development" (PUD), effective January 25, 1994. The amendment to the zoning ordinance was recorded in St. Clair County's land records. Thereafter, defendant Waterfront purchased the property.

In November 2005, the parties executed a purchase agreement wherein plaintiff agreed to purchase Parcels 1 to 6 for $3,575,000, specifically excluding a southern part of Parcel 6, known as and referred to as Parcel 7 from the transaction. (Parcel 7 is adjacent to Parcel 6 and they share the same tax identification number.) Plaintiff agreed to assume defendant's current

-1-

mortgage securing the property held by TransCapital Bank in the amount of $2,025,000 and pay the balance of the purchase price in cash. Defendant agreed to convey, by Covenant Deed, marketable fee simple title in the property. On November 16, 2005, defendant transferred to plaintiff, by Covenant Deed, the property specifically described as Parcels 1 to 6.

On November 30, 2012, approximately eight years after the transaction, plaintiff defaulted on its mortgage securing the property. TransCapital Bank, the mortgagee, then instituted foreclosure proceedings against Parcels 1 to 6 pursuant to the power of sale contained in the mortgage. Thereafter, on December 26, 2012, plaintiff brought this cause of action against defendant Waterfront requesting, among other things, to determine the relative interests of plaintiff and defendant in Parcels 1 to 7 under MCL 600.2932 (action to quiet title).

After bringing this lawsuit, plaintiff allegedly attempted to sell its property, Parcels 1 to 6, but was unsuccessful due to "various title issues and the fact that the [p]roperty is not marketable." Allegedly, plaintiff discovered that defendant's conveyance of Parcels 1 to 6, excluding Parcel 7, which is less than 100 percent of the property comprising the PUD, violated the city's zoning ordinance, which requires a PUD to be under single ownership and/or control. Thus, according to plaintiff, defendant failed to convey marketable title, contrary to the parties' purchase agreement. Plaintiff alleged that defendant's retention of Parcel 7 had prevented plaintiff from selling the property because it lacked marketable title.

On August 8, 2013, TransCapital Bank, the mortgagee, acquired Parcels 1 to 6 at a foreclosure sale. Thereafter, plaintiff brought a motion for summary disposition pursuant to MCR 2.116(C)(9) (failure to state a valid defense) and (C)(10) (no genuine issues of material fact). Plaintiff argued that defendant, by excluding Parcel 7 from the purchase agreement in violation of the city's zoning ordinance, breached its agreement to deliver marketable title free of defects and encumbrances. Plaintiff requested the court to quiet title to Parcel 7 in plaintiff and to amend the Covenant Deed to include Parcel 7 as of the date of the transaction "as though it was transferred ab initio," so that plaintiff owned 100 percent of the PUD, thereby restoring the marketability of its title. The city of St. Clair supported plaintiff's motion.

In response, defendant argued that summary disposition was improper because genuine issues of fact exist, the trial court must enforce the parties' purchase agreement as written, and plaintiff failed to provide any evidence of the property's lack of marketability or that the PUD rendered the property unmarketable. Defendant further argued that factual issues exist regarding whether plaintiff's claim was barred by the waiver and release provision contained in the parties' purchase agreement. Additionally, defendant asserted that plaintiff's claims were barred by res judicata because plaintiff could have raised them in an earlier action between the parties, thereby warranting summary disposition under MCR 2.116(C)(7) in defendant's favor. After conducting a hearing, the trial court ruled in favor of plaintiff, finding that, absent the inclusion of Parcel 7, defendant failed to convey marketable title as required by the parties' agreement and the resulting Covenant Deed. The court entered an order quieting title and amending the Covenant Deed to include Parcel 7. This appeal by defendant ensued.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Burkhardt v Bailey*, 260 Mich App 636, 646; 680 NW2d 453 (2004). We also review equitable actions to quiet title de novo. *Id*. "Whether a grant of equitable relief is proper under a given set of facts is a question of law that this Court reviews de novo." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371; 761 NW2d 353 (2008). Likewise, the interpretation of a deed and a contract presents questions of law that are subject to de novo review. *Id*. at 389; *Burkhardt*, 260 Mich App at 646.

Under MCR 2.116(C)(10), summary disposition is proper if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." In considering a motion brought under (C)(10), this Court must view the evidence submitted by the parties in the light most favorable to the nonmoving party. *Burkhardt*, 260 Mich App at 646. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "Where the burden of proof . . . on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

"When considering a motion brought under MCR 2.116(C)(7), it is proper for this Court to review all the material submitted in support of, and in opposition to, the plaintiff's claim." *Bronson Methodist Hosp v Allstate Ins Co*, 286 Mich App 219, 222; 779 NW2d 304 (2009). When determining whether a party is entitled to judgment as a matter of law under MCR 2.116(C)(7), a court must accept as true a plaintiff's well-pleaded factual allegations, affidavits, or other documentary evidence and construe them in the plaintiff's favor. *Id.* at 222-223. Additionally, the applicability of res judicata is a question of law subject to de novo review. *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 417; 733 NW2d 755 (2007).

"When deciding a motion under MCR 2.116(C)(9), which tests the sufficiency of a defendant's pleadings, the trial court must accept as true all well-pleaded allegations and properly grants summary disposition where a defendant fails to plead a valid defense to a claim." *Slater v Ann Arbor Public Schools Bd of Ed*, 250 Mich App 419, 425; 648 NW2d 205 (2002). Summary disposition under MCR 2.116(C)(9) is proper if the defendant's pleadings are so clearly untenable as a matter of law that no factual development could possibly deny the plaintiff's right to recover. *Id*. at 425-426.

## III. RES JUDICATA

Defendant claims that the trial court erred in concluding that res judicata does not operate to bar plaintiff's cause of action and denying its motion for summary disposition under MCR 2.116(C)(7). Res judicata "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004). Michigan's approach to the doctrine of res judicata is broad, barring "not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id*.

For the doctrine to apply, the first action must have resulted in a final decision. *Richards v Tibaldi*, 272 Mich App 522, 531; 726 NW2d 770 (2006). We consider these requirements in determining whether res judicata bars plaintiff's cause of action.

There is no dispute that both the instant and earlier causes of action involve the same parties—plaintiff and defendant. The parties also do not dispute that the earlier action was decided on the merits. Res judicata applies to consent judgments, which are final and binding. *Ditmore v Michalik*, 244 Mich App 569, 576; 625 NW2d 462 (2001). Accordingly, the trial court's entry of a stipulated judgment in the earlier action between the parties constituted a decision on the merits for purposes of res judicata.

In dispute is whether the "matter contested in the second case was, or could have been, resolved in the first." *Adair*, 470 Mich at 121. We apply res judicata broadly, utilizing "a transactional test to determine if the matter could have been resolved in the first case." *Washington*, 478 Mich at 420. Under Michigan's same transaction test, whether evidence necessary to support a first lawsuit differs from evidence necessary to support the subsequent suit is not dispositive. *Adair*, 470 Mich at 124-125. Instead, under the same transactional test, the assertion of different kinds of theories of relief still constitutes a single cause of action if a single group of operative facts gives rise to the assertion of relief. *Id*. "Whether a factual grouping constitutes a 'transaction' for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin, or motivation* [and] whether they form a convenient trial unit." *Adair*, 470 Mich at 125 (citation omitted, emphasis in original).

First, the relief requested in the earlier and instant action is not dependent on the same facts or transaction and did not arise out of the same agreements, and thus, the operative facts are not directly related in origin. *Id*. The rights and relief asserted in the instant action regarding defendant's alleged failure to convey marketable title to the property arose directly out of the parties' purchase agreement governing the transaction and the resulting Covenant Deed. The rights plaintiff asserted in the earlier action originated from a separate and distinct agreement between the parties regarding the proration of taxes and their oral agreements regarding the water bill and gift certificates entered into after the transaction.[1] Further, the facts necessary to obtain the relief sought differ and, thus, are not related in motivation. *Washington*, 478 Mich at 420; *Adair*, 470 Mich at 125. The obvious motivation for bringing suit against defendant in the earlier action was plaintiff's desire to recover amounts owed to it pursuant to the parties' agreements, whereas the motivation for bringing the instant cause of action is to render the title marketable so plaintiff can sell the property. The operative facts, thus, are not related in motivation because to obtain the relief sought in the earlier action, plaintiff needed to show that defendant breached its

---

[1] Res judicata also does not bar plaintiff's current claim regarding defendant's breach of the parties' agreement to pay its prorated share of the 2010 taxes assessed against Parcel 6 because plaintiff obviously could not have brought this claim during the earlier proceedings, brought in 2007 and adjudicated in 2008, because the alleged breach had not yet occurred. See *Cloverlanes Bowl, Inc v Gordon*, 46 Mich App 518, 524; 208 NW2d 598 (1973) (Res judicata does not apply where a change in circumstances occurred after a prior judgment is rendered).

agreements to pay the outstanding water bill, the redeemed gift certificates, and its portion of the property taxes assessed on Parcel 6. To obtain the relief sought in the instant action, plaintiff needed to show that defendant agreed to and/or warranted that it would convey marketable title in the property, that the severance of Parcel 7 from the planned unit development rendered the title unmarketable, and that the court should reform the deed to reflect the intent of the parties to convey marketable title.

Further, the operative facts supporting both causes of action are only somewhat related in time and space. The agreements, from which defendant's obligations in both cases arose, occurred on or around November 2005, the date of the conveyance of the property to plaintiff. However, the earlier action involved the accrual and nonpayment of taxes and redeemed gift certificates over a period of time ending November 2006. The instant action involved operative facts occurring after the 2008 adjudication of the earlier suit, including the city's alleged 2009 refusal to split the lot, plaintiff's alleged recent discovery that the title was unmarketable, as well as operative facts occurring before November 2005, including the 1994 amendment to the city's zoning ordinance that zoned the property as planned unit development.

In summary, we hold that the operative facts supporting the earlier and instant causes of action do not constitute the same transaction as contemplated under res judicata. *Adair*, 470 Mich at 121. Although the operative facts would arguably form a convenient trial unit, considering the facts pragmatically, res judicata does not bar the instant action because the claims in the earlier and instant causes of actions have "distinct factual bases" and are unrelated in origin, motivation, and only somewhat related in time and space. *Washington*, 478 Mich at 420; *Adair*, 470 Mich at 124-125. The trial court did not err by denying defendant's motion for summary disposition under MCR 2.116(C)(7) because plaintiff's cause of action is not barred by res judicata.[2]

### III. MARKETABLE TITLE

Defendant next contends that the evidence did not support the trial court's determination that plaintiff's title in the property was unmarketable. We disagree.

Marketable title was described by this Court in *Madhavan v Sucher*, 105 Mich App 284, 288; 306 NW2d 481 (1981) (citations omitted):

> Marketable title is one of such character as should assure to the vendee the quiet and peaceful enjoyment of the property, which must be free from [en]cumbrance. An [en]cumbrance is anything which constitutes a burden upon the title, such as a right-of-way, a condition which may work a forfeiture of the estate, a right to take off timber, or a right of dower. A title may be regarded as

---

[2] Likewise, contrary to defendant's assertion, this case does not implicate MCR 2.203(A), requiring compulsory joinder of every claim that the pleader has against the opposing party at the time of serving the pleading if it arises out of the same transaction or occurrence.

"unmarketable" where a reasonably prudent man, familiar with the facts, would refuse to accept title in the ordinary course of business, and it is not necessary that the title actually be bad in order to render it unmarketable.

Title may be unmarketable if "there is such a doubt or uncertainty as may reasonably form the basis of litigation." *Bartos v Czerwinski*, 323 Mich 87, 92; 34 NW2d 566 (1948). One "entitled to a 'marketable title' may not be required to accept a conveyance if the title is in such condition that he may be required to defend litigation challenging his possession and interest." *Id.*

The existence of the city's zoning ordinance delineating the property as a PUD, in and of itself, does not constitute an encumbrance because a party who agrees to purchase property that is restricted by zoning ordinances enters into the contract subject to the restrictions (here, the Covenant Deed expressly states that it grants the property subject to zoning, building and use restrictions and easements of record and specifically identifies zoning ordinances as a permitted exception). Restrictions imposed by a zoning ordinance are not generally considered to be encumbrances. *Wolff v Steiner*, 350 Mich 615, 625; 87 NW2d 85 (1957). The pertinent issue here, however, is whether the violation of the city's zoning ordinance constitutes an encumbrance on the title rendering the title unmarketable. We conclude that it does.

Defendant's conveyance of less than 100 percent of the PUD violated § 8.2.3(E) of the city's zoning ordinance because the PUD is no longer under single ownership or control: Parcel 7 remained under defendant's ownership and control and the remaining property (Parcels 1 to 6) was under plaintiff's ownership and control. Pursuant to zoning ordinance § 3.6, Parcel 7 could not be removed from the PUD without an amendment of the zoning ordinance by the city council. The conveyance itself, which effectively severed Parcel 7 from the planned unit development violated the zoning ordinance, thereby creating an encumbrance on the title. *Madhavan*, 105 Mich App at 288 (anything that constitutes a burden on the title is an encumbrance). Further, the separation of Parcel 7 from the PUD in contravention of the city's zoning ordinance certainly created doubt or uncertainty in the title of the property conveyed to plaintiff that reasonably could form the basis of litigation, such that "a reasonably prudent man, familiar with the facts, would refuse to accept title in the ordinary course of business." *Bartos*, 323 Mich at 92. Clearly, by acquiring less than 100 percent of the PUD, in violation of the zoning ordinance, plaintiff would be exposing itself to the possibility that the city might seek to enforce the ordinance through court action.[3]

---

[3] Under the enforcement provisions of the city's zoning ordinance, § 3.7, a person who violates the ordinance is responsible for a civil infraction, subject to payment of a civil fine, plus costs and other sanctions, for each infraction; each day on which a violation continues constitutes a separate offense and repeat offense are subject to increased fines; any use of premises which is in violation of any of the provisions may be abated by order of a court; and the Council is "empowered to commence and pursue any and all necessary and appropriate actions and/or proceedings" in the circuit court to restrain or prevent any noncompliance with or violation of the ordinance. Zoning Ordinance of the City of St. Clair, Michigan, § 3.7.

We find that the clear violation of the city's zoning ordinance, § 8.2.3(E), requiring single ownership and/or control of the planned unit development, constitutes an encumbrance on the title. Thus, there is no factual dispute that the title to plaintiff's property is unmarketable due to the separation of Parcel 7 from the planned unit development.[4]

## IV. BREACH OF COVENANT DEED

Defendant claims, as it did before the trial court, that there exist genuine issues of material fact regarding whether the conveyance breached the parties' purchase agreement.[5] We find that the trial court erred in concluding that defendant breached its obligation to convey marketable title and in quieting title and amending the Covenant Deed to include Parcel 7, albeit for different reasons than set forth by defendant.

Plaintiff brought an action in equity to quiet title, the purpose of which is to "determine the existing title to property by removing any cloud therefrom."[6] *Ingle v Musgrave*, 159 Mich App 356, 365; 406 NW2d 492 (1987); MCL 600.2932(5). MCL 600.2932(1) permits any person "who claims any right in, title to, equitable title to, interest in, or right to possession of land" to "bring an action in the circuit courts against any other person who claims or might claim any

---

[4] Our conclusion is in accord with a number of jurisdictions that have concluded that an existing violation of a zoning ordinance constitutes an encumbrance of the property's title rendering it unmarketable. See *Lohmeyer v Bower*, 170 Kan 442, 452; 227 P 2d 102, 108, 111 (Kan, 1951) ("[I]t is the violation of the restrictions imposed by both the ordinance and the dedication declaration, not the existence of those restrictions, that renders the title unmarketable."); *Oatis v Decluze*, 226 La 751, 757; 77 So 2d 28, 31 (La, 1954) ("[T]he mere existence of the zoning regulations under the ordinance does not of itself create an encumbrance on the title to the property. It is the violation of the restrictions imposed by the ordinance that affects the merchantability of the title."); and *Wilcox v Pioneer Homes, Inc*, 41 NC 140, 143; 254 SE 2d 214, 215-216 (NC App, 1979) (recognizing that the majority of jurisdictions have held that an existing violation of an ordinance is an encumbrance within the meaning of a warranty against encumbrances).

[5] Defendant did not cite to any legal authority to support its argument. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). However, we may overlook preservation requirements if, as here, "consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr*, 269 Mich App 424, 427; 711 NW2d 421 (2006).

[6] Count I of plaintiff's complaint requested the trial court to determine the parties' interest in Parcels 1 to 7 under MCL 600.2932, and thus, plaintiff brought an action to quiet title. Further, in its motion for summary disposition, plaintiff requested the court to quiet title to Parcel 7 in plaintiff on the basis that defendant breached its obligation to convey marketable title in the property to plaintiff and sought amendment of the Covenant Deed.

-7-

interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not." In an action to quiet title, the plaintiff has the initial burden of establishing a prima facie case of title. *Special Property VI, LLC v Woodruff*, 273 Mich App 586, 590; 730 NW2d 753 (2007). "[S]ummary disposition is properly entered if plaintiff fails to carry this burden." *Id*. Accordingly, plaintiff must establish a prima facie case of title in Parcel 7 to prevail on its claim to quiet title.

Plaintiff attempted to establish title in Parcel 7 through defendant's alleged breach of its obligation to provide marketable title in the property conveyed as required by the parties' purchase agreement and the resulting Covenant Deed. "Under the merger doctrine, 'a deed made in full execution of a contract for the sale of land is presumed to merge the provisions of a preceding contract pursuant to which it is made, including all prior negotiations and agreements leading up to the execution of the deed[.]'" *Johnson*, 281 Mich App at 374-375, quoting *Goodspeed v Nichols*, 231 Mich 308, 316; 204 NW 122 (1925). Defendant transferred a fee simple interest in the property, Parcels 1 to 6, by delivering a Covenant Deed. The deed warranted that it did nothing to encumber the title, as required under the parties' agreement, and thereby merging the matters relating to title into the deed. *Goodspeed*, 231 Mich at 315-316. Thus, under the merger doctrine, in determining whether the conveyance of less than 100 percent of the planned unit development breached defendant's obligation to provide marketable title, free of encumbrances, we look to the Covenant Deed. We must construe the deed to enforce the parties' intent as expressed in the language of the deed read as a whole. *Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 370; 699 NW2d 272 (2005). As this Court set forth in *Minerva Partners, Ltd v First Passage, LLC*, 274 Mich App 207, 216; 731 NW2d 472 (2007):

> "[I]t is the duty of the court to construe a deed as it is written, and if a deed is clear and unambiguous, it is to be given effect according to its language, for the intention and understanding of the parties must be deemed to be that which the writing declares. The meaning of the words used, and not what the parties may have intended by such language, is controlling." [Citations omitted.]

The Covenant Deed transferring the property at issue states, in pertinent part (emphasis added): "Grantor covenants and agrees the Grantor has not *heretofore* done, committed or wittingly or willingly suffered to be done or committed any act, matter or thing whatsoever, whereby the property hereby granted, or any part thereof, shall or may be charged or encumbered in title, estate or otherwise." Thus, pursuant to the plain and unambiguous language of the Covenant Deed defendant clearly warranted that it has not committed any act to encumber its title before it conveyed the property.[7] The deed further stated that the grantor "makes no other warranty whatever with respect to the title to the property hereby conveyed."

---

[7] The use of the word "heretofore" in the deed means "up to now; until the present; before this." *Webster's New World Dictionary, Second College Edition*; see also *Black's Law Dictionary* (10th ed), defining "heretofore" as "up to now; before this time."

Although a violation of a zoning ordinance *existing at the time of the conveyance* is generally regarded as an encumbrance on the title rendering it unmarketable, there is no dispute that, before, up to, or until the conveyance, the property at issue was *not* in violation of the city's zoning ordinance because defendant owned 100 percent of the PUD (Parcels 1 to 7). So, the PUD was under single ownership and/or control, as required pursuant to § 8.2.3(E) of the city's zoning ordinance, and before, up to, or until the conveyance, the property was not encumbered by a zoning ordinance violation. Instead, defendant's act of conveying less than 100 percent of the planned unit development to plaintiff, in accordance with the parties' express agreement, violated the zoning ordinance because once defendant conveyed Parcels 1 to 6 to plaintiff, the planned unit development was no longer under single ownership or control. Parcel 7 could not be removed from the planned unit development without an amendment of the zoning ordinance. Thus, the conveyance of the property itself gave rise to the violation of the zoning ordinance, thereby encumbering the title *upon the conveyance*.

We conclude that because there was no preexisting violation of a zoning ordinance before the conveyance and the act or matter that encumbered the title was the conveyance itself, defendant could not have breached its Covenant Deed warranting that, up to, before or until the conveyance, it had not done, committed, or suffered to be done or committed any act, matter, or thing, whereby the property conveyed shall or may be charged or encumbered in title. Accordingly, plaintiff could not rely on the Covenant Deed to remedy its lack of marketable title. Therefore, we find that plaintiff cannot claim an interest in Parcel 7 to support its action to quiet title, MCL 600.2932, by alleging a breach of the Covenant Deed.

This analysis and result comport with that expressed in *Seymour v Evans*, 608 So 2d 1141 (Miss, 1992), which we find persuasive. In that case, the seller subdivided his property and conveyed by warranty deed two parcels from his property that did not comply with the size requirements of the zoning ordinance governing subdivisions. As in the instant case, several years after the conveyance, when the purchasers filed a permit to put a mobile home on the property, they discovered their lots were not in compliance with the zoning ordinance. *Id.* at 1142. The Mississippi court held that the alleged violations of the subdivision ordinances did not violate the seller's covenant against encumbrances, finding;

> Courts will not presume that a purchaser intended to use land in violation of a regulation. This interpretation of the distinction is supported by the fact that where construction on, or use of, the premises at the time of the conveyance already violates a restriction, the purchaser may assume that it is permitted and a breach of the covenant will occur. [*Id.* at 1146-1147 (citation omitted).]

> * * *

> The Seymour conveyances obviously do not fall within the scope of the general rule that existing violations breach the implied covenant against encumbrances: The purported violations were not "existing" at the time of the conveyance. Rather, the conveyances themselves *gave rise to the violations*. The purchaser is not entitled to assume that a violation is permissible where there has been no history of tacit assent. We therefore find that the alleged violations of the

Jackson County subdivision ordinances do not abridge Seymour's covenant against encumbrances. [*Id*. at 1147 (emphasis in original, citations omitted).]

* * *

We hold that Seymour did not breach the warranties implied in her deeds to the appellees by conveying the subject properties in contravention to county subdivision ordinances. . . .

The violation of a subdivision ordinance breaches a covenant against encumbrances only where the violation already exists at the time of conveyance. The violation at issue here did not preexist the conveyance. Given the facts contained in the record, we hold that the ability of the appellees to obtain permits or variances does not affect Seymour's implied warranties. [*Id.* at 1148.]

In this case, like in *Seymour*, the violation did not preexist the conveyance; the conveyance itself, by severing Parcel 7 from the other parcels comprising the PUD, gave rise to the violation of § 8.2.3(E) of the city's zoning ordinance. Accordingly, plaintiff could not have assumed that the violation was permitted, and, thus, could not rely on defendant's covenant, warranting that it did not commit any act to encumber the property to remedy the resulting lack of marketable title. A zoning restriction is a public regulation "equally open for the grantor and the grantee to investigate. Therefore, the purchaser takes title with the risk that such a regulation may exist." *Seymour*, 608 So 2d at 1146 (citation omitted).

Here, the Covenant Deed expressly states that the property is conveyed "subject to zoning, building and use restrictions and easements of record" and identifies zoning ordinances as a permitted exception. Plaintiff clearly accepted the property subject to recorded zoning ordinances. The city ordinance establishing the planned unit development was recorded in the county's land records before the sale thereby putting the parties on constructive notice that the property to be conveyed was zoned as a planned unit development; therefore, it was subject to the city's ordinance requirement governing the PUD.[8]

We conclude that the trial court erred in finding that defendant breached the Covenant Deed and hold, as a matter of law, that defendant did not breach its Covenant Deed. Accordingly, plaintiff could not establish that it had an interest in Parcel 7 through defendant's alleged breach of the Covenant Deed and cannot succeed in its action to quiet title on the basis of the breach of the Deed, warranting summary disposition of plaintiff's action to quiet title in favor

---

[8] The parties did not specify or submit any evidence regarding when the amendment to the zoning ordinance, Ordinance No. 1994-01, was recorded in the county's land records. But, this Court can take judicial notice of land records of the St. Clair County Register of Deeds, from which it appears that the amendment was recorded at Liber 1639, pp 396-399 on August 14, 1997, well before plaintiff purchased the property in 2005. MRE 201(b)(2) (The court has discretion to take judicial notice of a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

-10-

of defendant. *Special Property*, 273 Mich App at 590-591. Thus, defendant is entitled to summary disposition on plaintiff's action to quiet title on the basis of the breach of the deed. *Id*.; MCR 2.116(I)(2).

## V. REFORMATION OF DEED

Defendant claims that equitable reformation of the parties' agreement is not warranted in this case. We initially note that the court amended the Covenant Deed and not the purchase agreement as plaintiff asserts. Regardless, we agree that reformation was improper.

"Reformation is an equitable remedy by means of which a written instrument is made or construed so as to express or conform to the real intention of the parties when some error has been committed." 27 MLP 2d, Reformation of Instruments, §1. The goal of reformation of an instrument is to reflect the actual intent of the parties. "Michigan courts sitting in equity have long had the power to reform an instrument that does not express the true intent of the parties as a result of fraud, mistake, accident or surprise." *Johnson*, 281 Mich App at 371-372.[9] Absent evidence of fraud or mistake, however, a deed controls over the prior contract. *Id.* at 375. "The general theory of reformation is that where there is clear evidence that both parties reached an agreement, but as the result of mutual mistake, or mistake on the one side and fraud on the other, the instrument does not express the true intent of the parties, equity will reform the instrument so as to express what was actually intended." *Ross v Damm*, 271 Mich 474, 480-481; 260 NW 750 (1935). But courts must exercise great caution in determining whether to reform written instruments. *Olsen v Porter*, 213 Mich App 25, 28; 539 NW2d 412 (1995).

Plaintiff did not allege a separate claim for reformation of the deed based on fraud or mutual mistake of the parties, nor did the trial court consider such a claim. Instead, plaintiff brought its claim requesting the court to quiet title to Parcel 7 in plaintiff based on defendant's alleged breach of the agreement or deed to convey marketable title, which we have concluded did not establish plaintiff's title to Parcel 7, and, thus, does not warrant reformation of the deed.

We find no other basis to warrant reformation of the Covenant Deed to include Parcel 7. Mutual mistake does not support reformation of the deed to include Parcel 7. The unambiguous terms of the purchase agreement express the obvious intent of the parties for defendant to convey marketable title to Parcels 1 to 6 via Covenant Deed, but to exclude Parcel 7. The executed Covenant Deed is consistent with this express intent because it transfers Parcels 1 to 6 to plaintiff and expressly warrants that defendant did nothing to encumber the property. Thus, the deed

---

[9] The merger doctrine does not prevent a court of equity from reforming a deed on the basis of "mutual mistake or unilateral mistakes coupled with inequitable conduct or fraud." *Johnson*, 281 Mich App at 375-377. In most such cases, "the actual intent of the parties to a deed can only be discerned by presenting evidence concerning the prior negotiations and agreements of the parties along with evidence that the deed did not accurately reflect that intent." *Id.* at 375. Thus, "the trial court could properly consider the parties' prior negotiations and agreements when determining whether the deed accurately reflected the intent of the parties." *Id.* at 377.

expresses the parties' true intent, as evidenced by their agreement, and there is no mistake as to the agreement actually entered into. *Johnson*, 281 Mich App at 381.

Both parties entered into the purchase agreement apparently unaware that Parcels 1 to 7 were zoned as a planned unit development per the 1994 amendment to the ordinance and that the city's zoning ordinance required the parcels comprising the PUD remain under single ownership and/or control. This mutual mistake, if there is one, related to an extrinsic fact, i.e., the terms of the zoning ordinance, which was apparently unknown to both parties at the time of the conveyance and discovered years later. Reformation of a contract is not allowed when the asserted mutual mistake relates to an extrinsic fact. *Dingeman v Reffitt*, 152 Mich App 350, 358; 393 NW2d 632 (1986). If the parties had known that the property was subject to the zoning ordinance establishing it as a planned unit development, they might have entered into another agreement, likely including Parcel 7 in the transaction and modifying the contract price. The controlling fact, however is that, based on the parties' knowledge at the time of the transaction, the parties intended to convey Parcels 1 to 6 via Covenant Deed and to exclude Parcel 7 from the transaction. Thus, the deed reflects the true mutual intent of the parties at the time of the transaction. Reforming the deed to include Parcel 7, which was never bargained for, would result in rewriting the contract and "courts cannot make a new contract for the parties." *Id.*; see also *E R Brenner Co v Brooker Engineering Co*, 301 Mich 719, 723; 4 NW2d 71 (1942) ("While equity has power to reform a contract in order to make it conform to the agreement actually made, nevertheless courts do not make new contracts for the parties.").

Moreover, equity will not come to the aid of a man whose condition is the result of his own failure to exercise the diligence of a reasonable person. *Powers v Indiana & Michigan Electric Co*, 252 Mich 585; 588; 233 NW 424 (1930). In this case, the status of the property as a PUD was recorded in the county land records before the sale, and the deed clearly conveyed the property subject to and expressly exempting zoning restrictions from its warranty. Thus, using reasonable diligence plaintiff could have discovered the zoning restrictions on the property.

On this record, despite the parties' agreement to convey marketable title, the evidence does not clearly and convincingly support reforming the deed to include Parcel 7: the parties expressly agreed to exclude the parcel from the purchase agreement and the deed was drafted in conformance with the parties' agreement. We, therefore, reverse the trial court's order reforming the Covenant Deed.

## VI. AFFIRMATIVE DEFENSES

Defendant claims that the trial court erred in failing to consider the affirmative defenses of statute of limitations, laches, and unclean hands. Plaintiff argues that defendant waived its affirmative defenses by failing to properly plead them or to provide any factual support for its defenses. We agree.

A party must set forth affirmative defenses in a first responsive pleading, MCR 2.111(F)(2); *Attorney General ex rel Dep't of Environmental Quality v Bulk Petroleum Corp*, 276 Mich App 654, 664; 741 NW2d 857 (2007), including "a defense that by reason of other affirmative matter seeks to avoid the legal effect of or defeat the claim of the opposing party, in whole or in part." MCR 2.111(F)(3)(b). Additionally, affirmative defenses must be listed under

a separate heading and must state the facts constituting such a defense. MCR 2.111(F)(3). Thus, the party must assert its defense and has the burden of providing evidence in support. *Bulk Petroleum Corp*, 276 Mich App at 664. On a motion for summary disposition based on subrules (C)(8), (9), or (10), a court must afford the parties "an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." MCR 2.116(I)(5). Amendments should be granted except when it would be futile to do so. *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997).

## A. UNCLEAN HANDS

Contrary to MCR 2.111(F)(2), defendant did not raise a defense of unclean hands in its answer or in response to plaintiff's motion for summary disposition. Accordingly, defendant waived this defense. *Bulk Petroleum*, 276 Mich App at 664; MCR 2.111(F)(2) and (3). Under MCR 2.116(I)(5), if the grounds asserted for summary disposition are based on subrule (C)(8), (9), or (10), as here, the court must give the parties an opportunity to amend their pleadings as provided by MCR 2.118 if justified by the evidence. In this case, the evidence before the court does not support a defense of unclean hands; it would be futile to allow defendant to amend the pleadings to add the defense. *Weymers*, 454 Mich at 658. "The clean-hands doctrine closes the doors of equity to one tainted with inequitableness or bad faith relative to the matter in which he or she seeks relief, regardless of the improper behavior of the defendant." *Richards v Tibaldi*, 272 Mich App 522, 537; 726 NW2d 770 (2006). There are no facts indicating that plaintiff acted inequitably or in bad faith relative to the transaction to warrant the assertion of a defense of unclean hands. *Id*.

## B. STATUTE OF LIMITATIONS

Defendant also did not assert a defense of statute of limitations in its answer to plaintiff's complaint as required under MCR 2.111(F)(3) and only briefly, without alleging specific facts, asserted in its oral argument on the motion for summary disposition that plaintiff's claim fell outside of the limitations period. Regardless, defendant's statute of limitations defense is not a valid defense. Although plaintiff sought to amend the Covenant Deed based on an allegation of breach of contract, the gravamen of its complaint was to quiet title under MCL 600.2932, and the court treated plaintiff's claim as an action to quiet title, i.e., to "determine the existing title to property by removing any cloud therefrom." *Ingle*, 159 Mich App at 365. Under MCL 600.5801(4), the limitations period for filing an action to recover disputed property is 15 years after the claim first accrued. Plaintiff's claim to quiet title accrued in 2005, the time of the conveyance through which plaintiff claimed title. Plaintiff filed its complaint in the instant action in 2012. Thus, plaintiff's action to quiet title brought pursuant to MCL 600.2932 fell well within the 15-year limitations period, and defendant could not prevail on its statute of limitations defense, making any amendment futile. *Weymers*, 454 Mich at 658.

## C. LACHES

Defendant raised the defense of laches in its answer to plaintiff's complaint but did not assert any facts at all in support of it. By failing to provide any factual support for its defense of laches, defendant did not properly plead this affirmative defense in its responsive pleading, as required under MCR 2.111(F), and effectively waived this defense as well. *Bulk Petroleum*, 276

Mich App at 664; MCR 2.111(F)(2). Further, on appeal, defendant fails to address the validity of the defense of laches at all and cites no authority to support it. Because this issue is not adequately addressed, we deem it abandoned. *Houghton v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003). Additionally, the evidence before the trial court supporting the motion for summary disposition shows that any amendment of its affirmative defense of laches to conform to the evidence would be futile. MCR 2.116(I)(5); *Weymers*, 454 Mich at 658.

"The doctrine of laches is concerned with unreasonable delay, and it generally acts to bar a claim entirely, in much the same way as a statute of limitation." *Michigan Ed Employees Mut Ins Co v Morris*, 460 Mich 180, 200; 596 NW2d 142 (1999). "It is applicable in cases in which there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Public Health Dep't v Rivergate Manor*, 452 Mich 495, 507; 550 NW2d 515 (1996). In the instant case, there is no evidence to support a finding of an "unexcused or unexplained delay" in commencing this action. *Id.*

A summary disposition motion brought under MCR 2.116(C)(9) tests the sufficiency of a defendant's pleadings. *Slater,* 250 Mich App at 425. With respect to its affirmative defenses, we find defendant's answer was clearly deficient: failed to assert its defenses or to provide any factual support for them. Thus, defendant has waived these defenses. *Bulk Petroleum*, 276 Mich App at 664. Regardless, the evidence before the trial court did not support the affirmative defenses of unclean hands, statute of limitations, or laches; consequently, allowing defendant to amend its pleadings to conform to the evidence would be futile. MCR 2.116(I)(5); *Weymers*, 454 Mich at 658. Therefore, summary disposition of these affirmative defenses under MCR 2.116(C)(9) for failure to assert a valid defense was appropriate. *Slater,* 250 Mich App at 425-426.

## VII. SUFFICIENCY OF FINDINGS

Defendant challenges the sufficiency of the trial court's findings, claiming that the court's opinion was inadequate because it failed to analyze the grounds for summary disposition in light of the evidence. We disagree. Our court rules do not require our courts to make findings of fact and conclusions of law on decisions of motions. MCR 2.517(A)(4). Regardless, we find the trial court stated its conclusions and findings, as well as the grounds for summary disposition, which were sufficient to facilitate appellate review. MCR 2.517(A)(2); *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 176; 530 NW2d 772 (1995).

## VIII. SUMMARY

We reverse the trial court's order quieting title and amending the Covenant Deed and granting summary disposition to plaintiff under MCR 2.116(C)(10) and remand for entry of an order granting summary disposition in favor of defendant, MCR 2.116(I)(2), consistent with this

-14-

opinion.[10] Given this resolution, we find it unnecessary to address defendant's additional claim that the wavier and release provision of the purchase agreement precludes plaintiff's claim against defendant.

We reverse in part and remand for entry of an order consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Stephen L. Borrello

---

[10] We find no error in the trial court's grant of plaintiff's summary disposition motion under MCR 2.116(C)(9) and denial of defendant's summary disposition motion under MCR 2.116(C)(7) and do not base our holding on these grounds.