FRANKOWICH *v.* FRANKOWICH.

1. MORTGAGES—FORM OF INSTRUMENT—DEEDS.
    Instrument, in form a warranty deed, which was given to grantee
    therein who became surety on grantor husband's bail bond *held*,
    a mortgage in fact.

2. REFORMATION OF INSTRUMENTS—INTENT—MISTAKE OF LAW.
    Reformation of a written instrument is allowed in equity where
    the instrument fails to express the intention of the parties
    because of a mutual mistake as to the interpretation or legal
    effect of the words of the writing, though there is no misappre-
    hension as to what words have been used.

3. SAME—MUTUAL MISTAKE—PAROL EVIDENCE.
    Parol evidence would be admissible, not to vary the terms of a
    deed, but to show the alleged mutual mistake for purpose of
    reforming the instrument so as to have it accord with the true
    intention of the parties thereto.

4. DEATH—PRESUMPTION FROM ABSENCE.
    Where the issue is upon the life or death of a person once shown
    to have been living, the burden of proof lies upon the party

REFERENCES FOR POINTS IN HEADNOTES

[1] 36 Am. Jur., Mortgages, § 125.
[2] 45 Am. Jur., Reformation of Instruments, §§ 46-48, 53.
[3] 36 Am. Jur., Mortgages, § 136; 45 Am. Jur., Reformation of In-
    struments, § 113.
[4, 5] 16 Am. Jur., Death, §§ 12, 18, 24.
[4, 5] Validity of by-law of mutual benefit association preventing
    recovery upon presumption of death from seven years' absence.
    17 A.L.R. 418, supplemented in 21 A.L.R. 1346, 36 A.L.R. 982,
    and 40 A.L.R. 1274.
[4, 5] Statutory or contractual limitation where presumption of
    death of the insured from seven years' absence is relied upon.
    34 A.L.R. 91, supplemented in 61 A.L.R. 686 and 119 A.L.R.
    1308.
[4, 5] Circumstances justifying inference of death of insured be-
    fore the lapse of seven years from his disappearance. 34 A.L.R.
    1389, supplemented in 61 A.L.R. 1327.
[4, 5] Presumption of death from seven years' absence as affected
    by domestic troubles. 64 A.L.R. 1288.

who asserts the death; but after the lapse of seven years, without intelligence concerning the person, the presumption of life ceases, and the burden of proof is devolved on the other party.

5. SAME—PRESUMPTION FROM 25 YEARS' ABSENCE.

In suit to reform a deed, in which defendant claimed that proof did not show his father was dead at time mother executed deed to plaintiff of property she and the father had held by the entireties, the father is presumed dead where he had been insane for about 1½ years before escaping from hospital for criminal insane some 25 years before execution of deed and was neither recaptured nor heard from since, without any determination of death having been made by the probate court.

6. ACCOUNTING—REFORMATION    OF    INSTRUMENTS—DEMAND—EVIDENCE.

In suit to reform deed of a farm occupied by defendant and reformation decreed placed title in plaintiffs, where no offer or suggestion was made to lower court to withhold matter of accounting pending decision as to title, and case was submitted without sufficient showing for an accounting and no demand for rent or income was made until recently and no request to remand cause for an accounting, no accounting will be required for proceeds of the farm up to time of rendition of decree of lower court.

7. REFORMATION OF INSTRUMENTS—RECORD—JOINT TENANCY WITH RIGHT OF SURVIVORSHIP.

In suit to reform deed wherein plaintiff husband and wife and his mother were designated as grantees "all by the entireties" so as to read "as joint tenants with right of survivorship" after death of mother, record required finding plaintiffs were entitled to such reformation and decree that plaintiffs are owners by the entireties.

Appeal from Chippewa; Runnels (Herbert W.), J. Submitted October 7, 1948. (Docket No. 44, Calendar No. 44,112.) Decided January 13, 1949.

Bill by Thomas Frankowich and wife against John Frankowich to construe and correct deed and to quiet title in plaintiffs. Decree for defendant. Plaintiffs appeal. Reversed and decree entered for plaintiffs.

*Sullivan, Veum & Moorhead,* for plaintiffs.

*James A. Henderson,* for defendant.

Reid, J. The bill in this case was filed to reform, construe or correct the wording of a deed, for a decree determining that plaintiffs are owners of the land described in the deed and requiring defendant to render up possession of the land involved, and for an accounting. Defendant denied that plaintiffs are entitled to any part of the relief sought. From a decree dismissing the bill, plaintiffs appeal.

John Frankowich, Sr., and his wife, Victoria (the surname being also spelled Frankowicz), were the parents of Thomas Frankowich, one of the plaintiffs, and John Frankowich, defendant. The parents became owners by the entireties of the land involved in this litigation, a farm, on November 17, 1899. The farm, of about 160 acres, is located in Raber township, Chippewa county.

On or about June 6, 1912, John Frankowich, Sr. (hereinafter referred to as John, Sr.), was arrested for assault with intent to murder, was tried in circuit court for that offense, and was acquitted on the ground of insanity. On December 16, 1912, he was committed to the Ionia State Hospital for criminal insane, from which institution he escaped in August, 1914, and neither the authorities of said institution nor his family have any knowledge of his whereabouts since his escape.

While John, Sr., was awaiting preliminary examination on the assault charge, he was released on bail signed by James L. Lipsett. John, Sr., and Victoria, his wife, gave James L. Lipsett what was in form a warranty deed of the farm in question, in which deed it is recited that the premises are free from incumbrances "except a certain agreement [made] and entered into this 27th day of June, A.D. 1912 [the

date of the warranty deed] by and between" the parties to the warranty deed. The agreement referred to in the warranty deed does not appear in the record.

James L. Lipsett and wife gave Victoria Frankowich (wife of John, Sr.) a quitclaim deed of the farm, dated January 15, 1913, while John, Sr., was in the Ionia institution.

Plaintiffs claim the instrument from John, Sr., and wife to Lipsett and the deed from Lipsett and wife to Victoria Frankowich (wife of John, Sr.) gave the latter the title to the farm. However, we are satisfied from all the circumstances of this case, as disclosed in the testimony, that the instrument given by John, Sr., and wife, Victoria, while in form a warranty deed with exceptions, was in fact merely a mortgage to secure Lipsett against loss by reason of signing the bail bond. The Lipsetts' later quitclaim deed to Victoria, the wife of John, Sr., merely operated to release the mortgage or lien against the farm. In view of our decision that the deed to Lipsett was in fact a mortgage, and the mortgage has been released, it is unnecessary to determine whether John, Sr., was mentally competent to execute the mortgage.

By a quitclaim deed (plaintiffs' exhibit No. 1) dated and recorded December 21, 1936, "Victoria Frankowich, sometimes known and called Victoria Frankowicz" (the widow of John, Sr.), deeded the premises in question to Theresa Johnston and on the same day, December 21, 1936, Theresa Johnston made a quitclaim deed (plaintiffs' exhibit No. 2) of the same premises to "Thomas Frankowich and Victoria Frankowich, husband and wife, and Victoria Frankowich, mother of Thomas Frankowich, all by the entireties, of Sault Ste. Marie, Michigan." The latter two deeds, plaintiffs' exhibits No. 1 and 2, were both prepared by the register of deeds, who

was not an attorney; Theresa Johnston, named in the deeds, was not an attorney but was employed in the register of deeds' office as a clerk.

Victoria Frankowich, mother of plaintiff Thomas Frankowich, died January 24, 1938.

Plaintiffs claim that the deed, plaintiffs' exhibit No. 2, should be corrected to read, "to Thomas Frankowich and Victoria Frankowich, husband and wife, and Victoria Frankowich, mother of Thomas Frankowich, as joint tenants with right of survivorship," and plaintiffs claim that it was the intention of the parties grantor and grantees that such deed, plaintiffs' exhibit No. 2, should have like effect as though written with the same words as those to which plaintiffs claim it should be corrected.

The testimony of witness Theresa Beedy showed that the mother, Victoria Frankowich, intended to give the farm to Thomas and wife and the testimony of another witness indicated that defendant John Frankowich had received $1,000 as his share.

*Scott* v. *Grow,* 301 Mich. 226 (141 A. L. R. 819), was a case in which the grant was to persons by the entireties, whereas the parties not being husband and wife could not take by the entireties. At page 237 we quote with approval as follows:

"Where a written instrument fails to express the intention of the parties because of a mutual mistake as to the interpretation or legal effect of the words of the writing, though there is no misapprehension as to what words have been used, reformation is allowed. It is not necessary, moreover, in order to establish a mistake which may be reformed that it should be shown that particular words were misunderstood. 'It is sufficient that the parties had agreed to accomplish a particular object by the instrument to be executed, and that the instrument as executed is insufficient to effectuate their intention.'" 5 Williston on Contracts (Rev. Ed.), p. 4423, § 1585; quot-

ing from *Leitensdorfer* v. *Delphy,* 15 Mo. 160, 167 (55 Am. Dec. 137).

We also say in the *Grow Case,* p. 239:

"Parol evidence would be admissible, not to vary the terms of the deed but to show the alleged mutual mistake and the true intention of the parties."

Defendant in this case denies that the deed should be corrected as plaintiffs claim, and defendant claims that the deed, plaintiffs' exhibit No. 2, was ineffectual to pass any title to Thomas Frankowich and wife because of what defendant claims to be insufficiency of proof that John, Sr., at the time of the deed (December 21, 1936), was dead.

At the time of his escape from the Ionia institution (in 1914), John, Sr., was evidently about 50 years of age, and had been insane for about 1½ years. It was the bounden duty of the authorities at Ionia State Hospital for criminal insane to use great diligence to ascertain his whereabouts, recapture him and thus remove a menace to human society. Because of the facilities available to the State institution, such as identification by fingerprinting and otherwise, the likelihood of the whereabouts of an escaped inmate of such an institution remaining unknown is much less than in the case of a missing person merely sought after by his immediate relatives, as, for instance, in the case of *Sackett* v. *Metropolitan Ins. Co.,* 260 Mich. 466. In the case at bar the authorities of the Ionia institution must be presumed to have performed the duties devolving upon them (including search and inquiry) but have received no knowledge of John, Sr.'s whereabouts since his disappearance and his whereabouts continues to be unknown to those who would be most likely to have knowledge about him.

Under the circumstances disclosed by all the testimony in this case, John Frankowich, Sr., must be

presumed for the purposes of this case to have been. dead in August, 1921.

"Where the issue is upon the life or death of a person, once shown to have been living, the burden of proof lies upon the party who asserts the death. But after the lapse of seven years, without intelligence concerning the person, the presumption of life ceases, and the burden of proof is devolved on the other party." *Heagany* v. *National Union,* 143 Mich. 186, 187, quoting from 1 Greenleaf on Evidence (15th Ed.), § 41.

The trial judge erroneously held that until it is determined by the probate court that John, Sr., is dead, the chancery court is without authority so to determine. However, in the following cases this Court has upheld decisions by lower courts in which the persons whose disappearances were under consideration were presumed to be dead without any determination by the probate court: *Bailey* v. *Bailey,* 36 Mich. 181; *People* v. *Eaton,* 59 Mich. 559; *Heagany* v. *National Union, supra; Griffin* v. *Northwestern Mutual Life Ins. Co.,* 250 Mich. 185; *Ledger* v. *Northwestern Mutual Life Ins. Co.,* 258 Mich. 26; *Sackett* v. *Metropolitan Life Ins. Co., supra.*

No offer or suggestion was made to the lower court to withhold the matter of accounting and first determine the title to the farm as a distinct issue and in view of the submission of the case without sufficient showing for an accounting, we consider that there shall be no accounting for the proceeds of the farm up to the time of the rendition of the decree in the lower court. Plaintiffs made no demand on defendant for any rent or income from the farm until 1946 and do not ask that the cause be remanded to the trial court for an accounting.

The decree appealed from is reversed. A decree will be entered herein determining that plaintiffs are

the owners by the entireties of the farm in question, as between the parties to this suit.   Costs to plaintiffs.

SHARPE, C. J., and BUSHNELL, BOYLES, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.