*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision
until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EFFECTIVE BUILDERS, INC.,

UNPUBLISHED
October 10, 2019

Plaintiff-Appellee,

v

No. 345665
Saginaw Circuit Court
LC No. 16-030891-CH

LINDA L. YEAGER,

Defendant-Appellant.

Before: RIORDAN, P.J., and K. F. KELLY and CAMERON, JJ.

PER CURIAM.

Defendant, Linda L. Yeager, appeals as of right the trial court's order denying her motion to set aside a settlement agreement in this quiet-title action brought by plaintiff, Effective Builders, Inc. Defendant moved to set aside the parties' agreement on the basis of a mutual mistake concerning the location of a disputed property line. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff and defendant own neighboring plots of real property. Part of plaintiff's house and septic tank was built on a small section of the property owned by defendant. Plaintiff claimed that it and its predecessors in interest had been in continuous possession of the disputed real estate since 1970, and it requested a judgment declaring it the lawful owner of the disputed property premised on theories of adverse possession and acquiescence.

Although plaintiff moved for summary disposition, the parties engaged in settlement negotiations because defendant had acknowledged the intrusion and uninterrupted use by the former owners.[1] Throughout the negotiations, both parties frequently referenced the distance of 12.5 feet from the back

---

[1] In her answer to the motion for summary disposition, defendant acknowledged that the property had been acquired through adverse possession, but alleged that the issue of how much land was taken presented an issue for the trier of fact.

-1-

corner of the house to the new proposed property line. This distance was based on a marking on a survey of the property prepared by Spicer Group of Saginaw. During these negotiations, plaintiff purportedly asserted that it only wanted the 12.5-foot side yard as indicated on the survey, and its representative argued for a measurement of 12.5 feet during telephone conferences and settlement conferences, and in chambers with the judge.

At the hearing on the dispositive motion, the parties placed a settlement agreement on the record and marked two parcels of land, labeled Parcel A and Parcel B, on the survey, using different colored highlighters. On the survey, the parties wrote the terms of the agreement:

(1) Plaintiff to get Parcel (A) & give Parcel (B) to Defendant

(2) Plaintiff to pay for new legal descriptions

(3) Ps counsel to prepare the Q/claim deeds

The agreement was signed and dated, and the survey was filed in the lower court record.

Defendant subsequently moved to set aside the agreement, arguing that the understanding between the parties was that Parcel A was a section of property 330 feet back from the road and 12.5 feet from the back corner of the house. However, when the new property line was staked, it placed the new property line 20 feet from the back corner of the house. When the Spicer survey was enlarged, it became apparent that the distance labeled "12.5" did not refer to how far the edge of the home was from the new property line, but instead referred to how far over the existing property line the house extended.

Defendant, who heard the terms of the agreement described to her over the phone by her attorney, stated that she agreed to the settlement because of the parties' mutual understanding that the new property line was 12.5 feet from the house. She argued that there was a mutual mistake between the parties regarding the boundaries of the parcels to be exchanged. Plaintiff, however, claimed that the final agreement was for the exchange of two parcels of land that were clearly marked on the survey, and that there were no distances or measurements discussed regarding the borders of these parcels, other than that 330 feet back from the road was the middle point for the swap. Plaintiff argued that the parcels agreed to be exchanged did not change when it was discovered that the distance was 20 feet rather than 12.5 feet. The circuit court reviewed the parties' briefs and the transcripts of the original hearing and denied defendant's motion to set aside the settlement. The court held that, although there was a mutual mistake because both parties had misinterpreted the reference to 12.5 feet in the survey, the mistake was not material because the settlement agreement did not contain any numerical designations or legal property descriptions; instead, "the parties highlighted two parcels of property and named them Parcel A and Parcel B[, and] . . . agreed that the parties' exchange of the parcels would settle the dispute over the property."

## II. APPLICABLE LAW

This Court reviews the trial court's decision on a motion to set aside a settlement agreement for an abuse of discretion. *Groulx v Carlson*, 176 Mich App 484, 493; 440 NW2d 644 (1989). When reviewing a claim of abuse of discretion, a reviewing court should defer to the lower court's decision unless the decision did not produce a result that was within the range of reasonable and principled outcomes. *Gonzalez v St John Hosp & Med Ctr*, 275 Mich App 290, 294; 739 NW2d 392 (2007).

An agreement to settle a lawsuit constitutes a contract governed by contractual rules of construction and interpretation. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). For a settlement agreement to be binding, it must be made in open court. MCR 2.507(G). A litigant who seeks to set aside an agreement when it is in writing or was made in open court "carries a heavy burden of persuasion." See *Wagner v Myers*, 355 Mich 62, 68; 93 NW2d 914 (1959). "As a general rule, settlement agreements are final and cannot be modified." *Clark v Al-Amin*, 309 Mich App 387, 395; 872 NW2d 730 (2012) (quotation and citation omitted). The rule demonstrates that settlement agreements are favored and should not be set aside unless fraud, mutual mistake, or duress is established. *Id*. An unambiguous contract is to be enforced as written. *Magley v M & W Inc*, 325 Mich App 307, 318; 926 NW2d 1 (2018).

However, Michigan courts may reform a contract if, because of fraud or mistake, it does not conform to the true intent of the parties involved. *Johnson Family Ltd Partnership v White Pine Wireless*, 281 Mich App 364, 371-372; 761 NW2d 353 (2008). Michigan has recognized the standards set forth in the Restatement of Contracts regarding risk of mistake. See *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 30 n 11; 331 NW2d 203 (1982). Restatement of Contracts, 2d, § 152, p 385, states:

> (1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.

In pertinent part, a party bears the risk of the mistake if that party "is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." Restatement of Contracts, 2d, § 154(b), pp 402-403.

A material mutual mistake occurs when the assent was premised on a mistake of a material fact, such as the subject matter, and it was mutual. See *Sherwood v Walker*, 66 Mich 568, 576-577; 33 NW 919 (1887). A material mutual mistake is also defined as "an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction." *Ford Motor Co v Woodhaven*, 475 Mich 425, 442; 716 NW2d 247 (2006).

One viable reason for a court to modify a contract is if there was a mutual mistake that caused the agreement to deviate from the intention of the parties. *Lenawee Co*, 417 Mich at 26. Where a contract fails to express the parties' intent, parol evidence may be admitted, not to vary the terms, but to show the mutual mistake. *Frankowich v Frankowich*, 323 Mich 516, 521; 35 NW2d 478 (1949).

## III. ANALYSIS

On appeal, defendant contends that the trial court abused its discretion in upholding the settlement agreement by failing to consider the parol evidence pertaining to the disputed footage and failing to conclude that the mistake was so material it warranted setting aside the agreement. We disagree. The circuit court did not abuse its discretion by upholding the settlement agreement because it was within the range of reasonable outcomes for the court to determine that, although there was a mutual mistake of fact, the mistake did not relate to the foundation of the agreement. Further, even if we held

that the mutual mistake of fact was material, defendant assumed the risk of the mistake pertaining to the staked footage, and therefore, was not entitled to have the agreement set aside or reformed.

Although defendant contends that the trial court failed to consider all of the parol evidence addressing the use of the 12.5 feet as a reference point for determining the property line, the trial court's opinion acknowledged that the footage was an issue argued by both parties, but held that the issue was not the mistake itself, but the import of the mistake, if any.

As the trial court noted, there was sufficient parol evidence in this case to demonstrate that both parties shared the mistaken belief that Parcel A placed the new property line at 12.5 feet from the back corner of the house. The trial judge indicated that he was under the impression that both parties thought the line was at 12.5 feet. However, the trial judge also expressed that it was his understanding that the terms of the settlement agreement delineated on the survey and as placed on the record were simply to exchange the parcel of land highlighted yellow with that highlighted pink. The trial court acknowledged that the parties' agreement did not delineate any numerical designations or legal property descriptions. Furthermore, the parties did not make the settlement agreement contingent upon the staking of the property. Thus, the trial court appropriately held that the unambiguous language of the settlement agreement must be enforced as written, and the key to the settlement was the exchange of two parcels of property, not the exact placement of the property lines. *Magley*, 325 Mich App at 318.

Further, the trial court appropriately concluded that any mistake was not material under the circumstances. Because the mistake constituted an incorrect assumption about the quantity of the property, not about the substance or nature of the parties' agreement, the mistake was not a material mutual mistake as defined by the law. Our Supreme Court has held that a party's mistake did not warrant relief when the mistake arose because of the party's "own carelessness or lack of due diligence" when the party had access to all of the information necessary to determine that a mistake was made. *Farm Bureau Mut Ins Co v Buckallew*, 471 Mich 940, 940; 690 NW2d 93 (2004).[2] "[A] mutual mistake is not a mere error or misunderstanding—it is an extreme mistake that must be so material that . . . it goes to the foundation of the agreement." *Clark*, 309 Mich App at 395 (quotation and citation omitted). A plaintiff may not avoid the agreement because of a change of heart or because he or she was incorrect in his or her assessment of the consequences. *Id*. at 396. A party and her attorney are presumed to understand and intend the language employed in a settlement agreement and cannot seek to avoid its plain terms because their evaluation of the terms was incorrect. *Id*. at 399-400.

In the present case, the size of Parcel A does not change the nature of the agreement. The written settlement was clear and unambiguous, and, as the trial court noted, the land parcels indicated on the survey did not change in size or nature. Therefore, the mistake concerning the distance to the parcel border from the house was not material because it did not affect the substance of the agreement. Furthermore, defendant and her attorney were presumed to understand and intend the terms of the agreement, and they could have included more specific terms to ensure that the distance to the border did not exceed 12.5 feet. There was not a material mutual mistake to make reformation of the agreement possible.

---

[2] Supreme Court orders that have an understandable rationale are binding on this Court. *Sanders v McLaren-Macomb*, 323 Mich App 254, 276 n 10; 916 NW2d 305 (2018).

Additionally, even if a substantive mutual mistake occurred, defendant was not necessarily entitled to relief if she assumed the risk. "Rescission is not available . . . to relieve a party who has assumed the risk of loss in connection with the mistake." *Lenawee*, 417 Mich at 30. A party bears the risk of the mistake if "he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." Restatement, § 154(b), pp 402-403.

Defendant was aware at the time the contract was executed that she had only limited knowledge about the distance from the house to the new property line, but she treated her understanding of the survey as sufficient. Defendant could have measured the distance between the house and the proposed line marked on the survey before agreeing to the settlement terms, rather than relying on a small number written on a survey and making an assumption about what the number referenced. Indeed, it was defendant who observed that when one expands the survey document, it becomes apparent that the arrow with the measurement 12.5 was not illustrating how far from the house the new property line was. Defendant therefore had the ability to acquire this information before entering into the settlement agreement.

Defendant argues that she was not personally aware of the details of the settlement agreement because she was not present and relied upon the representations of the attorneys. However, "a third party who reaches a settlement agreement with an attorney employed to represent his client in regard to the settled claim is generally entitled to enforcement of the settlement agreement even if the attorney was acting contrary to the client's express instructions." *Nelson v Consumers Power Co*, 198 Mich App 82, 89-90; 497 NW2d 205 (1993) (quotation and citation omitted). Plaintiff is entitled to enforcement of the settlement because defendant's attorney agreed to the terms, even if those terms were ultimately contrary to defendant's wishes that the property line be no more than 12.5 feet away from the house.

Defendant agreed to the settlement over the phone despite her lack of knowledge, and her attorney agreed to the terms. It was reasonable for the trial court to determine that there was no legally significant mutual mistake. Therefore, we conclude that the trial court's decision to uphold the settlement agreement falls within the range of reasonable outcomes.

Affirmed.


/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Thomas C. Cameron