*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

JOHN H. HIATT and MARILYN M. HIATT JOINT
LIVING TRUST, by MARILYN M. HIATT and
DENICE K. PURVES, Co-Trustees,

        Plaintiffs/Counterdefendants-
        Appellants/Cross-Appellees,

v

PRAIRIE CREEK GOLF COURSE, INC.,

        Defendant/Cross-Defendant/Third-
        Party Defendant-Appellee/Cross-
        Appellant,

and

CREEK, LLC,

        Defendant/Cross-Defendant-
        Appellee/Cross-Appellant,

and

RUSSELL A. THORNTON,

        Defendant/Counterplaintiff/Cross-
        Plaintiff-Appellee,

and

ROGER OVERWAY TRUST, by GREGORY
OVERWAY, Trustee,

        Defendant/Third-Party Plaintiff-
        Appellee,

UNPUBLISHED
March 18, 2021

No. 350678
Clinton Circuit Court
LC No. 2017-011711-CK

and

HAMILTON FAMILY TRUST, by DELANO A.
HAMILTON and FRANCES A. HAMILTON, Co-
Trustees,

        Defendants,

and

JOAN OVERWAY,

        Third-Party Plaintiff.

Before:  BORRELLO, P.J., and BECKERING and SWARTZLE, JJ.

PER CURIAM.

This case involves two mortgages of golf-course property in Dewitt, Michigan.  Appellants, as co-trustees of the John C. Hiatt and Marilyn M. Hiatt joint-living trust, challenge the trial court's decision that a mortgage issued to John Hiatt did not have higher priority than another mortgage that was executed at the same time.[1]  Appellants also challenge the trial court's denial of Hiatt's motion seeking a ruling that Creek, LLC ("Creek") is the successor entity or alter ego of Prairie Creek Golf Course, Inc. ("Prairie Creek").  Creek and Prairie Creek cross-appeal the trial court's order denying their request to reform the mortgages to exclude a 36-acre parcel (the "Seyfried Parcel") from the scope of the mortgages.  Because we find no error warranting appellate relief, we affirm.

## I.  BACKGROUND

This appeal arises from a foreclosure action involving a note and mortgage for land comprising the Prairie Creek Golf Course.  Previously, the land was owned by Prairie Creek, which was also responsible for running the golf course.  The sole shareholders of Prairie Creek were John Hiatt, Delano Hamilton, Roger Overway, and Russell Thornton, each of whom owned a 25% interest in the corporation.  Hiatt and Hamilton decided to sell their shares, and the parties asked Arlyn Bossenbrook, an attorney who had worked for Thornton, to prepare documents to facilitate Prairie Creek's redemption of Hiatt's and Hamilton's shares.  The owners all agreed that the company would purchase the percentages owned by Hiatt and Thornton for $550,000 each by

---

[1] This action was initiated by John Hiatt, individually.  Hiatt died after he filed this appeal, and this Court granted a motion to substitute "Marilyn M. Hiatt and Denice K. Purves, as Co-Trustees of the John H. Hiatt and Marilyn M. Hiatt Joint Living Trust, as appellants in place of the deceased John H. Hiatt." *Hiatt Joint Living Trust v Prairie Creek Golf Course, LLC*, unpublished order of the Court of Appeals, entered November 17, 2020 (Docket No. 350678).

promissory note, secured by identical mortgages on the golf-course land. The documents were drawn up using a legal description from tax-identification numbers, rather than the metes-and-bounds description from an earlier deed or deeds transferring the land to Prairie Creek. Hamilton provided the tax document to Bossenbrook. As a result, the descriptions used in the mortgages contained language that included both a 94.8-acre parcel (the "95-acre parcel") and a 36-acre parcel (referred to by the parties as the Seyfried Parcel). The 95-acre parcel contained most of the playing surface of the golf course, but the Seyfried Parcel contained three holes of the golf course.

After the shareholder buyout, the remaining owners of Prairie Creek created Creek, a limited liability company, to hold the real estate of the golf course. Ownership of the 95-acre parcel and the Seyfried Parcel was transferred to Creek by warranty deed, and Creek assumed by operation of law the Hiatt and Hamilton mortgages on the land. Prairie Creek was not dissolved, but instead was charged with operating the golf course.

As part of his lawsuit, Hiatt claimed that his mortgage had higher priority than Hamilton's mortgage under the applicable recording statutes, and that Creek should be regarded as an alter ego of Prairie Creek for purposes of determining successor liability. The trial court rejected each of these arguments.

Meanwhile, cross-appellants sought reformation of the mortgages to exclude the Seyfried Parcel from the property subject to the mortgages, based on the doctrine of mutual mistake. They relied on Bossenbrook's deposition testimony that he had prepared and sent the parties a binder containing the documents for the transaction. In the binder, Bossenbrook had attached copies of the two mortgages, but he had crossed-out the portion of the legal description pertaining to the Seyfried Parcel; those crossed-out mortgages were not, however, recorded. The trial court declined to decide the mortgage-reformation issue on summary disposition, concluding that questions of fact existed that precluded the grant of summary disposition. After a bench trial, the trial court declined to reform the mortgage.

The parties now appeal the trial court's decisions.

II. ANALYSIS

A. PRIORITY OF MORTGAGES

Appellants first argue that the trial court erred when it determined that the Hiatt and Hamilton mortgages were of equal priority. Although the two mortgages were stamped with the identical date and time, appellants argue that the Hiatt mortgage was recorded first, and thus was first in priority to the Hamilton mortgage, because the Hiatt mortgage was stamped with instrument number 5004768, while the Hamilton mortgage was stamped with instrument number 5004769.

The trial court decided this issue on summary disposition under MCR 2.116(C)(10). We review de novo a trial court's decision regarding a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(10) is appropriately granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Id*. at 119-120. We also review de novo questions of

statutory interpretation. *Nason v State Employees' Retirement Sys*, 290 Mich App 416, 424; 801 NW2d 889 (2010).

We conclude that the trial court correctly analyzed the priority of the two mortgages. For the reasons stated by the trial court and in the decisions of the federal bankruptcy court cited by the trial court, there is no question that the two mortgages shared equal priority under the version of the recording statute in effect at the time the mortgages were recorded. See MCL 565.24 and 25 (pre-2008 amendments); see also *Pankey v New Century Mtg Corp*, 392 BR 710 (Bankr ED Mich, 2008); *In re Schmiel*, 362 BR 802 (Bankr ED Mich, 2007). The mortgages were delivered to the register of deeds at the same time, the recording fees were paid, and the mortgages were stamped with the same date and time upon delivery. Accordingly, we affirm the trial court's decision holding that the Hiatt and Hamilton mortgages were equal in priority.

## B. SUCCESSOR AND ALTER EGO

Appellants next argue that Creek is the successor and alter ego of Prairie Creek such that Creek's assets should be subject to Hiatt's judgment against Prairie Creek. Successor liability is a theory of liability that is a form of equitable relief. *Zantel Mktg Agency v Whitesell Corp*, 265 Mich App 559, 568; 696 NW2d 735 (2005). Whether equitable relief is proper under the facts as presented is a question of law that an appellate court reviews de novo. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

Initially, we note that although Hiatt raised a piercing-the-corporate-veil claim below, appellants concede on appeal that they are not seeking to pierce the corporate veil to obtain a right of recovery against Thornton and the Overway Trust. Accordingly, it is not necessary to consider that theory of equitable relief.

Traditionally, a right of recovery under a theory of successor liability was limited to product-liability cases. See *Foster v Cone-Blanchard Machine Co*, 460 Mich 696, 701; 597 NW2d 506, 509 (1999), citing *Turner v Bituminous Cas Co*, 397 Mich 406; 244 NW2d 873 (1976). This right to recovery, however, has been expanded to apply to limited-liability companies and corporations "in purely commercial contexts." *Lakeview Commons v Empower Yourself*, 290 Mich App 503, 509; 802 NW2d 712 (2010). The basic rule in Michigan regarding successor liability is as follows:

> The traditional rule of successor liability examines the nature of the transaction between predecessor and successor corporations. If the acquisition is accomplished by merger, with shares of stock serving as consideration, the successor generally assumes all its predecessor's liabilities. However, where the purchase is accomplished by an exchange of cash for assets, the successor is not liable for its predecessor's liabilities unless one of five narrow exceptions applies. The five exceptions are as follows:
>
> > (1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction

-4-

was fraudulent; (4) where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation. [*Id.* at 506-507 (cleaned up).]

Applying this test to the present case, we conclude that the trial court did not err when it held that Creek was not a successor, such that Hiatt could recover from Creek's assets.

To begin, there is nothing in the record to suggest that there was a consolidation or merger of the two entities, nor is there anything to suggest the express or implied acceptance of liabilities, except for the assumption of the mortgages by Creek. Moreover, appellants have not established a genuine issue of fact that the transaction was "fraudulent." The parties have acknowledged that the transfer was designed to avoid a potential recovery by future tort plaintiffs against the owners' personal assets. Establishing a limited-liability business entity to avoid personal liability is not itself a wrong, *Green v Ziegelman*, 310 Mich App 436, 459; 873 NW2d 794 (2015), and under many circumstances this is precisely why an individual or entity forms a corporation or limited liability company in the first place.

Appellants presented no evidence to show that this purpose was fraudulent, or any evidence to suggest that at the time of the transfer, any party had the plan of using the transfer to avoid responsibility for paying Hiatt's or Hamilton's notes at some point in the future. Although there was evidence that Hiatt suspected that he might again own part of the golf course, there was no evidence that anyone anticipated that the golf course would be unable to satisfy its responsibilities under the notes and mortgages. Appellants also failed to present evidence that Thornton or Overway planned to have Thornton eventually own a right to payment on Hamilton's note while holding an interest in the collateral. If anything, Thornton appears to have been a mostly silent owner in the enterprise, who had signed the documents forming Creek, but had nothing to do with running it. Appellants have provided nothing to indicate that the transfer was fraudulent at the time, particularly given the circumstance that the mortgages still bind the real estate held by Creek.

With respect to the fourth exception, appellants argue that if the trial court had properly examined the totality of the circumstances, it would have found that the transfer occurred without consideration and that the creditors—Hiatt and Hamilton—were not provided for. This argument misses the whole declared point of the transaction, which was to prevent possible tort plaintiffs from recovering more than the insurance limit. Moreover, contrary to appellants' argument, it is well-settled that courts will not generally inquire into the adequacy of consideration. See *Gen Motors Corp v Dep't of Treasury*, 466 Mich 231, 238-239; 644 NW2d 734 (2002). Consideration is merely "a bargained-for exchange" where a party performs a service, receives a benefit, or sustains a detriment. *Id.* In this case, Prairie Creek could continue running the golf course while Creek held the real-estate assets. The transfer potentially benefited Hiatt and Hamilton as creditors because they received the same tort protection from possible tort plaintiffs who could impair Hiatt's and Hamilton's later right of recovery in the event of a tort plaintiff's recovery of a money judgment against Prairie Creek and its assets.

With respect to the fifth exception, the Michigan Supreme Court has stated that a "continuity of enterprise between a successor and its predecessor may force a successor to accept liability with the benefits of such continuity." *Foster*, 460 Mich at 703-704 (cleaned up).

> [A] prima facie case of continuity of enterprise exists where the plaintiff establishes the following facts: (1) there is continuation of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations of the predecessor corporation; (2) the predecessor corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and (3) the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the selling corporation. *Turner* identified as an additional principle relevant to determining successor liability, whether the purchasing corporation holds itself out to the world as the effective continuation of the seller corporation. [*Id*. (citation omitted).]

Appellants have failed to show a genuine issue of fact that Creek is a "mere continuation" of Prairie Creek. Critically, Creek did not hold itself out as a continuation of Prairie Creek. Although Prairie Creek transferred real estate to Creek, Prairie Creek continued to run the golf course. Moreover, except for the assumption of the mortgages on the land, there is nothing in the record to suggest that Creek assumed any liabilities and obligations (as mentioned earlier), let alone those necessary for the uninterrupted continuation of all of Prairie Creek's business. Importantly, Prairie Creek continued operating as a viable business running the golf course. Thus, the transfer does not meet the second and third requirements discussed above to support finding that Creek was a mere continuation.

For these reasons, we affirm the trial court's decision on summary disposition that Hiatt cannot attach properties owned by Creek under a theory of successor liability. Prairie Creek was not a mere shell company. It operated the golf course, and therefore presumably had assets, such as accounts receivable, etc., even if it is now effectively bankrupt. Moreover, Hiatt still has a valid mortgage on the land held by Creek, i.e., the security for full payment of the note that he bargained for.

## C. REFORMATION

In their cross-appeal, Prairie Creek and Creek argue that the trial court erred by holding that they failed to produce clear and convincing evidence at trial of a mutual mistake to support their claim that the mortgages should be reformed to exclude the Seyfried Parcel. Reformation of a deed or a mortgage is an equitable power. See *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 376; 761 NW2d 353 (2008). We review de novo the trial court's decision whether to reform the mortgages, but review for clear error any underlying findings of fact made by the trial court. *McDonald*, 480 Mich at 197.

"Michigan courts sitting in equity have long had the power to reform an instrument that does not express the true intent of the parties as a result of fraud, mistake, accident, or surprise." *Johnson Family Ltd Partnership*, 281 Mich App at 371-372. Michigan has recognized the standards set forth in the Restatement of Contracts regarding the risk of mistake. See *Lenawee Co*

*Bd of Health v Messerly*, 417 Mich 17, 30 n 11; 331 NW2d 203 (1982).  The Restatement of Contracts, 2d, § 152(1), p 385, provides:

> Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.

A party bears the risk of the mistake if that party "is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient."  Restatement of Contracts, 2d, § 154(b), pp. 402-403.

One reason for a trial court to modify a contract or deed is if there was a mutual mistake that caused the agreement to deviate from the intention of the parties.  *Lenawee Co*, 417 Mich at 26.  Where a contract fails to express the parties' intent, parol evidence may be admitted, not to vary the terms of the contract, but to show the mutual mistake.  *Frankowich v Frankowich*, 323 Mich 516, 521; 35 NW2d 478 (1949).  A material mutual mistake occurs when the assent was premised on a mistake of a material fact, such as the subject matter, and it was mutual.  See *Sherwood v Walker*, 66 Mich 568, 576-577; 33 NW 919 (1887).  A material mutual mistake is also defined as "an erroneous belief, *which is shared and relied on by both parties*, about a material fact that affects the substance of the transaction."  *Ford Motor Co v Woodhaven*, 475 Mich 425, 442; 716 NW2d 247 (2006) (emphasis added).

In this case, the purpose of the requested reformation was to rewrite the mortgages to attain the alleged agreed-upon objective the mortgages were intended to accomplish.  See *Casey v Auto Owners Ins Co*, 273 Mich App 388, 398; 729 NW2d 277 (2006).  Because the result of any reformation would be to alter the parties' formal written promissory notes and mortgage agreements that have been executed and recorded (i.e., to substantially alter the scope of the encumbrances created), the trial court was "required to proceed with utmost caution in exercising jurisdiction to reform written instruments."  *Theophelis v Lansing Gen Hosp*, 430 Mich 473, 492; 424 NW2d 478 (1988).  To insure such caution, the law places upon the party seeking reformation the burden of proving entitlement to it by "clear and convincing" evidence.  *Johnson Family Ltd Partnership*, 281 Mich App at 372.

The trial court here essentially found that Prairie Creek and Creek were not entitled to reformation because they failed to provide clear and convincing evidence that inclusion of the Seyfried Parcel was a mistake that was also shared by Hiatt.  Hamilton did not testify that Hiatt knew or approved of Hamilton's provision of the allegedly erroneous legal description to Bossenbrook.  Hamilton also acknowledged that he did not have any recollection or knowledge of what Hiatt's intent was with respect to the mortgage.  Hamilton testified that he did not know whether Hiatt approved of the crossed-out mortgages in the Bossenbrook folder, which were never recorded.  He did not testify that he ever spoke with Bossenbrook about the erroneous legal description such that it caused Bossenbrook to prepare the crossed-out mortgages.

In addition, Bossenbrook testified that the crossed-out mortgages were made by his assistant, "presumably" to correct the legal description, but that he did not remember the changes being done.  He did not know why he or his assistant had not followed up on having the parties

initial the changes and then record them. He also maintained he did not know until trial that the crossed-out mortgages had never been recorded, because the changes were made to the documents that already had been recorded. This testimony does not provide support for a finding that any mistake was shared by Hiatt, or that Hiatt ever saw the allegedly proper changes in the crossed-out mortgages. In addition, we note that testimony was presented that the 95-acre parcel did not contain any "good" ingress or egress, which supports a rationale for why Hiatt would want to gain a mortgage on both parcels.

Thornton provided testimony about his position and rationale for not including the Seyfried Parcel in the mortgages—he expected the loans would be paid off on the 95 acres. Thornton, however, never spoke with Hiatt about whether he thought he was receiving a mortgage on only the 95 acres, and Thornton acknowledged that there had been no appraisal of the property before the stock redemption. With respect to the crossed-out mortgages, Thornton acknowledged that he had not read the descriptions in the folder Bossenbrook had prepared and did not know descriptions had changed. He also did not know whether Hiatt had read the pamphlet. As with Hamilton's testimony, Thornton's testimony does not support a finding that Hiatt shared in any mistake in including the Seyfried Parcel.

After reviewing the evidence and the trial court's analysis, we conclude that the trial court's underlying factual findings are not clearly erroneous. While cross-appellants presented some testimony and evidence that could support a finding that Hiatt intended and mistakenly believed that his mortgage did not include the Seyfried Parcel, the trial court did not err when it found that this evidence was not clear and convincing. "Because the evidence does not clearly favor either party, we defer to the trial court's superior ability to judge the credibility of the parties' attorneys." *Johnson Family Ltd Partnership*, 281 Mich App at 388.

Cross-appellants argue that cross-appellees cannot point to any evidence to establish that Hiatt uniquely knew of the city's errors in its tax notices five years before the error was discovered in 2007, and argue that Hiatt could have believed that the Seyfried Parcel was included in the legal description only if he was armed with that knowledge. Through this argument, cross-appellants are attempting to place the burden of persuasion or production on cross-appellees. It is not their burden to provide clear and convincing evidence to support their position. Rather, cross-appellants, as the parties seeking reformation, have the burden of producing clear and convincing evidence of a mutual mistake to warrant reformation.

Cross-appellants also maintain that if Hiatt actually knew about the error, reformation could still be had on a theory of unilateral mistake in the face of Hiatt's fraud or misrepresentation. As the trial court noted, however, cross-appellants did not pursue such a claim. Moreover, a claim for fraud must be pleaded with particularity. MCR 2.112(B)(1); *State ex rel Gurganus v CVS Caremark Corp*, 496 Mich 45, 63; 852 NW2d 103 (2014). Cross-appellants have not done so, and they cannot now obtain relief on this theory of recovery. In addition, cross-appellants have not provided any caselaw or other support for the proposition that Hiatt was required to reveal any special knowledge to cross-appellants. They have not, for example, developed an argument that Hiatt was under a fiduciary duty to do so. Cross-appellants cannot simply announce their position or assert an error and leave it to this Court to develop it for them. *Mudge v Macomb Cty*, 458 Mich 87, 105; 580 NW2d 845 (1995).

In sum, cross-appellants presented some evidence in support of their position that Hiatt shared their mistake, but the trial court did not clearly err when it found that cross-appellants had not presented clear and convincing evidence that Hiatt shared their mutual mistake such that cross-appellants are entitled to reformation. See *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995).

Cross-appellants also argue the trial court erred by concluding that there were other equitable grounds for refusing to reform the mortgages. Cross-appellants misinterpret this portion of the trial court's analysis. The trial court held that cross-appellants had not presented sufficient evidence that the equities of the circumstances clearly and convincingly required reformation, particularly the lack of evidence concerning Hiatt's actual intent.

We note the general principle that equitable relief is not required when an individual's condition "is attributable only to that want of diligence which may be fairly expected from a reasonable person." *Powers v Indiana & Mich Elec Co*, 252 Mich 585, 588; 233 NW 424 (1930). After reviewing the evidence about the various equities and the introduction of the crossed-out mortgages, the trial court stated:

> The Court suggests that is precisely the position in which the golf course and Mr. Hamilton find themselves. Mr. Hamilton as principal daily operations officer of the golf course elected which tax description to furnish Mr. Bossenbrook, the golf course's attorney in this transaction. Reading and drawing out that description would have put a reasonable person on notice that it encompassed the 98.4 acre parcel and the Seyfried parcel. No one on the golf course's side of the closing apparently did so. If they had they would have found out that not only both parcels were mortgaged but that the other tax identification number that pertained only to the Seyfried Parcel in error and resulted in the golf course paying taxes twice on the same 36 acres. In short, the mistake that is claimed to justify reformation is unilateral and the responsibility of the course and its agents.

> Moreover, the documentary evidence in particular, most tellingly the X'd out mortgages tell us that the principals had notice of the "mistaken" description in the original mortgages shortly after they were executed. With that knowledge, actual or constructive, direct or vicarious, they did nothing to correct the error. No communication with Mr. Hiatt, no action to reform and no meeting in an effort to clarify and resolve the matter. They waited until this suit was filed 15 years after the event and after Mr. Hiatt was no longer able to testify as to his then understanding. That delay does not weigh in favor of equitable relief.

Because a trial court may consider the lack of diligence of the party seeking reformation, and the evidence supports a finding that cross-appellants lacked diligence here, we affirm the trial court's decision that cross-appellants did not show that principles of equity required reformation.

Affirmed.

/s/ Stephen L. Borrello
/s/ Jane M. Beckering
/s/ Brock A. Swartzle